In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2410

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHANE BUCHMEIER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 CR 82--Joan B. Gottschall, Judge.

Argued January 18, 2001--Decided June 26, 2001


   Before Cudahy, Kanne, and Rovner, Circuit
Judges.

   Kanne, Circuit Judge.  A jury found Shane
Buchmeier guilty of two counts of being a
felon in possession of a firearm in
violation of 18 U.S.C. sec. 922(g)(1),
and two counts of receiving stolen
firearms in violation of 18 U.S.C. sec.
922(j). Because of his multiple prior
violent felony convictions, Buchmeier was
sentenced as an armed career
criminalpursuant to section 4B1.4 of the
United States Sentencing Guidelines,
which resulted in his receiving a prison
term of 188 months. He now appeals,
arguing that his conviction is invalid
because the district court abused its
discretion by: (1) denying his motion to
dismiss all counts of the indictment
against him because they were
duplicitous; (2) refusing to submit a
special interrogatory to the jury for
each firearm listed in the indictment;
(3) refusing to submit his theory of
defense instruction to the jury; and (4)
denying his motion for a judgment of
acquittal. Upon review of the district
court's rulings, we agree with the court
with regard to all but one of these
rulings; we find that Counts I and III of
the indictment are duplicitous. However,
as we explain, the error resulting from
the government's formulation of these
counts was harmless. Therefore, we affirm
Buchmeier's conviction.

I. History

Arthur Haverstock, a resident of Crown Point, Indiana, took a two-week vacation to the Bahamas, leaving his nineteen-year-old nephew, Justin Gorball, to watch over his house. In his residence, Haverstock maintained an extensive firearms collection. Some of these weapons were located in a gun cabinet in Haverstock's bedroom and others were stored in a gun safe anchored to the floor of a closet. During this two-week period, Gorball invited a recently-made acquaintance, Neil Schroeder, to his uncle's house, and allowed him to sleep there on several occasions. Problems arose, however, when Schroeder began to "visit" Haverstock's house when Gorball was not there and without Gorball's permission. Schroeder brought his friend John Weis with him on several of these visits. He showed Weis the different items in the Haverstock home, including Haverstock's firearms collection. On August 5, Schroeder took Weis with him to Steger, Illinois, to Rocco DeMarco's house, where they met DeMarco, Mark Flamini Rossi, Brian Engel, and Buchmeier. During this visit, Schroeder announced to the group of men that he could obtain firearms. Buchmeier expressed interest, telling Schroeder to "bring them." After this discussion, Schroeder left DeMarco's house with Weis and Rossi and drove to the home of Tommy Joyce. Schroeder obtained a firearm from Joyce's house and returned to DeMarco's house. The group of men then drove to Buchmeier's home. At Buchmeier's house, Weis, DeMarco, and Rossi watched Schroeder give Buchmeier the firearm he had obtained from Joyce's house, and DeMarco saw Buchmeier place the firearm in his van. Weis, DeMarco, and Rossi also heard Schroder tell Buchmeier that he could obtain additional firearms. Buchmeier again expressed his interest to Schroeder, indicating that if Schroeder obtained additional firearms he would take a look at them.

That same day, Schroeder took Weis and Rossi with him to Haverstock's house. Schroeder obtained two handguns from Haverstock's gun safe, which Rossi recognized as a .357 revolver and a .44 magnum revolver. The three men then joined DeMarco, Engel, and Buchmeier at

Buchmeier's house, where Schroeder and Rossi each handed Buchmeier one of the firearms taken from the Haverstock home. Buchmeier discharged one of the guns into the woods near his house. He then put one of the weapons into his van. Engel heard Buchmeier explain that he was going to purchase the firearms. After giving Buchmeier these two handguns, Schroeder indicated to Buchmeier that he could also obtain shotguns and rifles. Buchmeier again expressed an interest in Schroeder's offer. Schroeder and Weis then left Buchmeier's house. After Schroeder and Weis had left, Engel and DeMarco heard Buchmeier state that he would "get rid" of the guns he had obtained from Schroeder through an individual by the name of Richie in Park Forest, Illinois.

The next day, on August 6, Schroeder and Weis returned to the Haverstock home. Weis observed Schroeder remove approximately eight rifles from Haverstock's gun cabinet and put them into a duffle bag. Schroder also took a quantity of fishing supplies, which he loaded into a plastic crate. Schroeder and Weis then went to Buchmeier's house with these items. Schroeder displayed the contents of the duffle bag to Buchmeier. DeMarco saw Buchmeier place the duffle bag and fishing supplies into his van. The four men then drove to DeMarco's house. Buchmeier, DeMarco, and Schroeder went inside. Schroeder later emerged from the house carrying a pack of marijuana, a pager, and $150, all of which he showed to Weis.

In relation to these transactions, Buchmeier told DeMarco that he had "pretty much ripped off" Schroeder. Buchmeier also explained that he would trade or sell the firearms. Approximately one week later, DeMarco watched Buchmeier saw off the barrel of a shotgun. Buchmeier told DeMarco that he would keep this firearm in his van for protection. Buchmeier also told Engel that the shotgun was one of the guns he had purchased from Schroeder.

Haverstock returned home from his vacation to find that a number of items had been stolen, including the firearms from the gun cabinet in his bedroom. He contacted the police regarding the burglary. Haverstock was also unable to

find the key to his gun safe. After obtaining a new key, approximately two weeks later, Haverstock opened his gun safe and found that two handguns had been removed. Haverstock made an inventory for the police of all of the stolen items.

Special Agent Jeff Emmons, of the Bureau of Alcohol, Tobacco and Firearms (the "ATF"), investigated the Haverstock burglary. During this investigation, Agent Emmons obtained the cooperation of Schroeder and recorded a telephone conversation between Buchmeier and Schroeder regarding the stolen firearms. Some time after recording this conversation, Agent Emmons interviewed Buchmeier. Buchmeier admitted that he had purchased fishing equipment from Schroeder, and that he had seen firearms in the trunk of Schroeder's car, but he denied ever being interested in purchasing firearms from Schroeder, much less having actually purchased any firearms from him. Buchmeier subsequently acknowledged, however, that he handled one of the firearms. He also acknowledged that his voice was the voice on the recorded phone conversation discussing the stolen firearms with Schroeder. Buchmeier explained to Agent Emmons that the firearms had merely passed through his hands. He then asked Agent Emmons why he was interested in him since he was "small time" and had not sold any of the firearms to gang members.

A grand jury returned a six count indictment against Buchmeier and Schroeder. Counts I and IV charged Buchmeier with two instances of being a felon in possession of a firearm in violation of 18 U.S.C. sec. 922(g)(1). Counts III and VI charged Buchmeier with two separate incidents of receiving stolen firearms in violation of 18 U.S.C. sec. 922(j). The remaining two counts of the indictment charged Schroeder with two instances of selling stolen firearms in violation of sec. 922(j). Buchmeier filed a motion to dismiss the four counts of the indictment against him, arguing that the counts were impermissibly duplicitous. The district court denied this motion. Buchmeier was tried by jury and found guilty of all four counts.

II.  Analysis

A.  Buchmeier's Motion for Judgment of Acquittal

We will first review Buchmeier's claim that the district court improperly denied his motion for judgment of acquittal because if he is correct, we need not address his other claims. Buchmeier argues that the district court erred in denying his motion because the evidence presented at his trial was insufficient to support his conviction. The government contends that the district court properly denied his motion.

We note that there is a question of whether Buchmeier made his motion for a judgment of acquittal in a timely manner. In a case where a defendant has been convicted by a jury, Rule 29(c) of the Federal Rules of Criminal Procedure explains that "a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period." Fed. R. Crim. P. 29(c). The jury's guilty verdict was returned on January 15, 1998; however, Buchmeier did not file his motion for a judgment of acquittal until February 2, 1998. We have previously found that a defendant's failure to properly file such a motion results in the waiver of "any challenge on appeal to the sufficiency of the evidence absent a manifest miscarriage of justice." United States v. Baker, 40 F.3d 154, 160 (7th Cir. 1994). The government has not argued that Buchmeier waived this argument on appeal, however, instead choosing to argue that there was sufficient evidence presented at Buchmeier's trial to support his conviction. Thus, the government has waived Buchmeier's waiver. See id. at 160 (citing United States v. Moya-Gomez, 860 F.2d 706, 745-46 n.33 (7th Cir. 1988)).

At the conclusion of Buchmeier's trial, the district court instructed the jury that it could find Buchmeier guilty of any of the four counts charged in the indictment if it unanimously agreed that he possessed at least one of the firearms listed in that charge and if it also agreed as to which particular firearm he possessed. This "general verdict of guilty" for those counts listing multiple firearms "may be upheld only if there is sufficient evidence to support the charge as to each of the acts alleged." United States v. Berardi, 675 F.2d 894, 902 (7th Cir. 1982). We have explained that "[t]he

reason for this rule is that, with the 'one-is-enough' instruction that was given here, it would be impossible to determine whether the jury based its decision on an act for which there w[as] insufficient evidence." Id. In evaluating Buchmeier's claim that the evidence was insufficient to support his conviction we will "consider the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor." United States v. Fraizer, 213 F.3d 409, 416 (7th Cir. 2000). Additionally, we will find for Buchmeier "only if there is no evidence from which the trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Polin, 194 F.3d 863, 866 (7th Cir. 1999).

The main thrust of Buchmeier's challenge is an attack on the testimony of various witnesses called by the government during his trial. He first argues that Haverstock's testimony as to what firearms were stolen from his house is not credible. He likewise contends that DeMarcco, Rossi, and Weiss testified inconsistently as to whether they actually saw him in possession of any of the firearms listed in the indictment. Buchmeier asserts that these alleged weaknesses in the government's evidence indicate that there is reasonable doubt as to his culpability for the crimes for which he was convicted.

We have repeatedly explained with regard to claims like Buchmeier's that "[b]ecause questions of credibility are solely for the trier of fact, such arguments are 'wasted on an appellate court.'" United States v. Hatchett, 31 F.3d 1411, 1416 (7th Cir. 1994) (quoting United States v. Marin, 7 F.3d 679, 688 (7th Cir. 1993)) (citation omitted). "[I]t is not our role, when reviewing the sufficiency of the evidence, to second-guess a jury's credibility determinations." United States v. McGee, 189 F.3d 626, 630 (7th Cir. 1999). Therefore, "'absent extraordinary circumstances,' this court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability." United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir. 1989) (citation omitted).

There are no circumstances present in

this case which require us to reevaluate the reliability of the witness testimony presented by the government at Buchmeier's trial. The testimony at trial repeatedly confirmed Buchmeier's acquisition and possession of each of the firearms listed in the indictment. Although Buchmeier is correct in noting that at the time of his trial in January 1998 Haverstock was no longer able to recall the makes, models, and serial numbers of the missing firearms, the record demonstrates that Haverstock knew which firearms were missing from his house when he made the inventory of the missing guns for the police in August of 1994. Haverstock noted that four of the missing weapons were handguns, and the rest were rifles and shotguns. Haverstock used a photograph of his rifles and shotguns to substantiate the loss of these firearms. He also referred to the boxes that several of the firearms had been in when he originally purchased them. Witness testimony describing the firearms Schroeder removed from Haverstock's house matched Haverstock's written description of the firearms that were stolen from his house. Additionally, multiple witnesses placed the firearms taken by Schroeder in Buchmeier's possession. Further testimony also indicated that Buchmeier knew these firearms were stolen and that he sold or intended to sell the majority of these stolen firearms. We find, therefore, that the evidence presented against Buchmeier was sufficient to support a guilty jury verdict for any of the firearms listed in the indictment.

B. Buchmeier's Motion to Dismiss the Indictment on Duplicity Grounds

Prior to the commencement of his trial, Buchmeier moved to have Counts I, III, IV, and VI of the indictment dismissed, arguing that they were impermissibly duplicitous. The district court denied the motion, finding that "the government's decision to charge Buchmeier in four counts rather than in twenty counts was reasonable and not prejudicially duplicitous." United States v. Buchmeier, No. 97 CR 82-01, 1997 WL 695678, at *2 (N.D. Ill. Nov. 4, 1997). Buchmeier now appeals the district court's decision.

"'Duplicity' is the joining of two or

more offenses in a single count." United States v. Marshall, 75 F.3d 1097, 1111 (7th Cir. 1996). We have explained that "the prohibition of duplicitous counts is embodied in Rule 8(a) of the Federal Rules of Criminal Procedure, which provides for 'a separate count for each offense.'" United States v. Berardi, 675 F.2d 894, 897 n.5 (7th Cir. 1982). However, an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense. See id. at 898.

Buchmeier contends that sec. 922(g)(1) and sec. 922(j) both contemplate a violation to include the possession of a single firearm. Because the counts against him included multiple firearms, Buchmeier asserts that they each encompass more than one offense and are therefore impermissibly duplicitous.

In order to address Buchmeier's argument we must determine Congress' intended unit of prosecution for these subsections. Section 922(g)(1) prohibits a convicted felon from "possess[ing] . . . any firearm" that has traveled in interstate commerce. Likewise, sec. 922(j) makes it "unlawful for any person to receive . . . any stolen firearm" that has traveled in interstate commerce. Although the use of the word "any" in these subsections creates "[u]ncertainty as to the unit of prosecution intended by Congress," United States v. Cunningham, 145 F.3d 1385, 1398 (D.C. Cir. 1998), this court has found guidance for interpreting such statutes in the Supreme Court's decision in Bell v. United States, 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905 (1955). See McFarland v. Pickett, 469 F.2d 1277 (7th Cir. 1972); United States v. Oliver, 683 F.2d 224 (7th Cir. 1982). In Bell, the Supreme Court reviewed a provision of the Mann Act, 18 U.S.C. sec. 2421, which explained that "'[w]hoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose. . . . Shall be fined not more than $5,000 or imprisoned not more than five years, or both.'" 349 U.S. at 82 (quoting 18 U.S.C. sec. 2421). The Court addressed the question of whether an individual who admitted to

transporting two women in the same car on the same trip for purposes prohibited by sec. 2421 had committed one or two violations of that section. See id. at 82-83. Finding there to be no clear congressional expression of a desired unit of prosecution, the Court found that the defendant should only have been charged with one violation. See id. at 83. The Court explained that when "Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." Id. at 84.

Relying on the Court's reasoning in Bell, this court evaluated the language of sec. 922(j) in McFarland v. Pickett, 469 F.2d 1277 (7th Cir. 1972)./1 The question in McFarland was whether a defendant who was found with two stolen firearms could be charged with a separate count for each firearm in his possession. See 469 F.2d at 1278. Unable to discern any clear congressional intent as to the desired unit of prosecution from the language "any stolen firearm or stolen ammunition," this court concluded that the government could not charge McFarland with separate counts of concealing and storing stolen firearms in violation of sec. 922(j) for each of the firearms found in his possession when "there [wa]s no evidence to show whether the two firearms were stored at the same or different locations or whether they were acquired at the same or different times." 469 F.2d at 1279.

Subsequent to McFarland, in United States v. Oliver, 683 F.2d 224 (7th Cir. 1982), this court reviewed the predecessor to the current version of sec. 922(g)(1), at that time 18 U.S.C. sec. 922(h),/2 and again found Congress' intended unit of prosecution to be unclear. 683 F.2d at 232-33. Therefore, we relied on Bell and McFarland to conclude that a convicted felon found to be in possession of both a firearm and ammunition could only be charged with one violation of sec. 922(h) if the government "could not show that the ammunition and revolver were acquired at different times." Id. at 232; see also United States v. Calhoun, 510 F.2d 861, 869 (7th Cir. 1975) (finding that under 18 U.S.C. sec. 1202(a), "absent a showing that two firearms were stored or acquired

at different times or places, there is only one offense, not two").

These decisions indicate that this court, like every other circuit court, has been unable to clearly determine Congress' intended unit of prosecution for these subsections. We have thus determined that when a defendant's possession of multiple firearms is simultaneous and undifferentiated, the government may only charge that defendant with one violation of sec. 922(g)(1) and sec. 922(j), regardless of the actual quantity of firearms involved. See McFarland, 469 F.2d at 1278; Oliver, 683 F.2d at 232-33; see also United States v. Verrecchia, 196 F.3d 294, 298 (1st Cir. 1999) ("[T]he simultaneous possession by a felon of multiple firearms, that is, possession of multiple firearms in one place at one time, is only one violation of sec. 922(g)(1)."); accord United States v. Pelusio, 725 F.2d 161, 168-69 (2d Cir. 1983) (construing sec. 922(g)(1)'s predecessor sec. 922(h)); United States v. Frankenberry, 696 F.2d 239, 244-45 (3d Cir. 1982) (construing sec. 922(h)); United States v. Dunford, 148 F.3d 385, 390 (4th Cir. 1998); United States v. Hodges, 628 F.2d 350, 352 (5th Cir. 1980) (construing sec. 922(h) and sec. 18 U.S.C. 1202(a)); United States v. Adams, 214 F.3d 724, 728 (6th Cir. 2000); United States v. Kinsley, 518 F.2d 665, 668-70 (8th Cir. 1975) (construing sec. 18 U.S.C. 1202(a)(1)); United States v. Szalkiewicz, 944 F.2d 653, 654 (9th Cir. 1991); United States v. Valentine, 706 F.2d 282, 292-94 (10th Cir. 1983) (construing sec. 922(h)); United States v. Bonavia, 927 F.2d 565, 568-69 (11th Cir. 1991); United States v. Cunningham, 145 F.3d 1385, 1398 (D.C. Cir. 1998).

Thus, under sec. 922(g)(1), a convicted felon is seemingly punished for each transaction or acquisition by which heattempts to arm himself unlawfully. Likewise, under sec. 922(j), an individual is punished for each separate transaction involving stolen firearms. Therefore, these decisions also suggest that the government may charge an individual with multiple violations of either sec. 922(g)(1) or sec. 922(j) where it can produce evidence demonstrating that the firearms were stored or acquired separately and at different times or places. See McFarland,

469 F.2d at 1279; Oliver, 683 F.2d at 232-33; see also United States v. Keen, 96 F.3d 425, 431 n.11 (9th Cir. 1996) ("Guns that are acquired at different times or stored in separate places permit separate punishment to be imposed for each violation of sec. 922(g)."); Cunningham, 145 F.3d at 1398 ("When a felon possesses multiple weapons, only one offense is committed unless the weapons are stored or acquired at different times or places."). But see United States v. Valentine, 706 F.2d 282, 294 (10th Cir. 1983) (reserving the issue of whether "sec. 922(h) . . . should be construed to support multiple convictions because separate times of receipt and possession are shown").

Turning to the facts of this case, we find that the government properly limited the charges it filed against Buchmeier for the firearms he acquired from Schroeder on August 6, 1994. The government charged Buchmeier with having committed one violation of sec. 922(g)(1) (Count IV) and one violation of sec. 922(j) (Count VI) on August 6, listing all seven firearms involved in this transaction in these two counts. Because these firearms were simultaneously acquired and received by Buchmeier, any attempt to charge him with more than one violation of either sec. 922(g)(1) or sec. 922(j) for these seven firearms would have been multiplicitous.

The closer question, however, is whether the government's decision to charge Buchmeier with one count of violating sec. 922(g)(1) (Count I) and one count of violating sec. 922(j) (Count III) for the stolen firearms he acquired from Schroeder through the two transactions on August 5 resulted in these counts being duplicitous. Throughout this case the government has repeatedly described the interactions between Schroeder and Buchmeier as three separate acquisitions of stolen firearms in which Buchmeier, a convicted felon, attempted to arm himself unlawfully. The evidence supports this characterization. Thus, we find that the government could have charged Buchmeier with three separate counts of both sec. 922(g)(1) and sec. 922(j). Of course, just because we find that the facts of this case permitted the government to charge Buchmeier with three sets of counts, one for each transaction, does

not mean that it was required to do so. See United States v. Hammen, 977 F.2d 379, 383 (7th Cir. 1992) (explaining that although each count of conviction for committing bank fraud in violation of 18 U.S.C. sec. 1344 requires the execution of some act in furtherance of a scheme, "the law does not require the converse: each execution need not give rise to a charge in the indictment"). However, once the government chose to charge Buchmeier with acquiring and receiving all ten firearms, we find that it was required to either charge him with one violation of sec. 922(g)(1) and sec. 922(j), by way of a continuing course of conduct, or with three separate violations of sec. 922(g)(1) and sec. 922(j), in order to avoid formulating either a duplicitous or multiplicitous indictment. Therefore, we do not think the government's decision to combine the two August 5 transactions into the same two counts of the indictment was proper.

The government has argued that the indictment is not duplicitous because the multiple acts charged in each count were part of a continuing course of conduct. In support of this argument the government asserts that the three transactions taken together could be seen as a continuing course of conduct because the same persons were involved in the same action over the course of a relatively short period of time. As alluded to above and as we further explain below, we agree that Buchmeier could have been charged with one continuing violation. However, the government's reliance on this argument is misplaced in light of the manner in which it chose to charge Buchmeier.

In United States v. Berardi, 675 F.2d 894 (7th Cir. 1982), the defendant was charged with multiple counts, including one count of obstruction of justice in violation of 18 U.S.C. sec. 1503. 675 F.2d at 897. Although sec. 1503 only requires one discrete act for a violation,/3 this count "described three epi-sodes in which Berardi was alleged to have furthered this endeavor." Id. While this court acknowledged that each episode listed in the count could have constituted a separate violation and therefore a separate count in the indictment, we observed that "[t]he three alleged acts of obstruction occurred

within a relatively short period of time, werecommitted by one defendant, involved a single witness, and were in furtherance of [the] solitary object of influencing [a witness] not to reveal [information] to the grand jury." Id. at 898. Thus, finding that "the indictment, fairly interpreted, charge[d] Berardi with a continuing course of conduct, during a discrete period of time, to influence" one witness's grand jury testimony, we concluded that these acts constituted one violation of sec. 1503, and therefore, the count was not prejudicially duplicitous. Id. at 898, 899.

Unlike the indictment in Berardi, the indictment in this case did not charge Buchmeier with one continuing course of conduct. Instead, the government chose to divide the three transactions and the firearms involved in each of these transactions based on the day that each of the transactions took place; one count included the two transactions on August 5, 1994, and another count dealt with the one transaction that took place on August 6, 1994. Thus, we are left wondering why the government broke up this alleged course of conduct into two separate counts if it truly wished to rely on our analysis in cases like Berardi. Ironically, the facts of this case provide substantial support for the government's argument that the three interactions between Buchmeier and Schroeder could reasonably be characterized as a continuing course of conduct. The three meetings took place over a very short period of time, less than forty-eight hours, they involved the same activity between the same two parties, and there was only one instance of payment, which took place after the third and final interaction. However, the government's decision to charge Buchmeier with multiple counts of each violation renders it unable to successfully assert this argument in defense of the indictment. Therefore, we set aside the government's proffered argument.

Having concluded that Counts I and III are duplicitous, we must now determine if this error affected the fairness of Buchmeier's trial. See United States v. Tanner, 471 F.2d 128, 139 (7th Cir. 1972) ("The duplicity of Count III would not require a dismissal if it were shown to constitute 'harmless error' under Rule

52(a)."); see also United States v. Kimberlin, 781 F.2d 1247, 1250 (7th Cir. 1985). "'The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both.'" United States v. Marshall, 75 F.3d 1097, 1111 (7th Cir. 1996) (quoting United States v. Blandford, 33 F.3d 685, 699 n.17 (6th Cir. 1994)). Additionally, we have explained that a duplicitous indictment may expose a defendant to other adverse effects including "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from less than a unanimous verdict as to each separate offense." Id.; see also Kimberlin, 781 F.2d at 1250; Berardi, 675 F.2d at 899.

In United States v. Marshall, 75 F.3d 1097 (7th Cir. 1996), we upheld an indictment containing a count that included "arguably separate and distinct" offenses. Id. at 1112. Our conclusion that the indictment was not fatally flawed rested in large part on the fact that the district court had avoided prejudicing the defendant by instructing the jury that it was required to unanimously agree as to which of the offenses included in the disputed count the defendant had committed. See id.; see also United States v. Cherif, 943 F.2d 692, 701 (7th Cir. 1991) (explaining that the possibility that the defendant was convicted by a less than unanimous jury-- where a count of the indictment listed two unlawful acts in the same count-- could have been eliminated by an instruction requiring the jury to unanimously agree as to which act the defendant was guilty of committing); accord United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997) ("The risk inherent in a duplicitous count . . . may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act."); United States v. Trammell, 133 F.3d 1343, 1354-55 (10th Cir. 1998) ("'One cure for an otherwise duplicitous indictment is to give an augmented instruction requiring unanimity on one or the other of the acts charged

within a count that otherwise appear to constitute separate offenses.'") (citation omitted). Referring to all four counts against Buchmeier, the district court explained to the jury that:

[i]n order to return a verdict of guilty on any one count, you must find that the defendant possessed at least one of the firearms listed in that count, and you must unanimously agree as to which particular firearm or firearms listed in that count the defendant possessed. If you cannot agree in that manner, you must find the defendant not guilty of that count.

Because the jury received this specific instruction, Buchmeier can be assured that the decision to convict him on Counts I and III was the result of a unanimous verdict. Additionally, the other adverse effects that can result from a duplicitous indictment have not occurred in this case: the specificity of the counts properly notified Buchmeier of the charges against him; he was not subjected to any prejudicial evidentiary rulings during the course of his trial; the review he has sought on appeal has not been limited by the duplicitous counts; he was not prejudiced in sentencing as his sentence of 188 months was the low end of the applicable range of sentences given his status as an armed career criminal; and he faces no risk of double jeopardy because the government has conceded that he cannot again be charged for any of the firearms listed in the indictment. Because Buchmeier was not prejudiced by the duplicitous counts of the indictment and none of the concerns that can arise with a duplicitous indictment have been implicated in this case, we find that the government's improper formulation of the indictment was harmless error. Therefore, we will affirm Buchmeier's conviction on these counts.

C.  Buchmeier's Theory of Defense Jury Instruction

  Buchmeier also challenges the district court's refusal to submit his theory of defense instruction to the jury. At the end of Buchmeier's trial his counsel proposed the following theory of defense instruction:

The defendant's mere association with those who may have possessed firearms is insufficient to show possession or constructive possession.

The defendant's possession or constructive possession is not established by the defendant having played the role of a finder or broker, or by the defendant having brought a buyer and seller together.

The government objected to this proposed instruction, arguing that neither the constructive possession language nor the mere association language were appropriate based on the evidence in the case. The district court refused to submit the proposed instruction to the jury, over Buchmeier's objections, finding that there was an insufficient evidentiary record to support such an instruction.

Because Buchmeier properly objected at trial to the district court's ruling, we review the district court's decision not to instruct the jury on his theory of defense de novo. See United States v. Irorere, 228 F.3d 816, 825 (7th Cir. 2000). With regard to a defendant's right to have his or her theory of defense instruction submitted to the jury, this Court has explained that

a defendant is entitled to a jury instruction as to his or her particular theory of defense provided: "(1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the appellant a fair trial."

United States v. Swanquist, 161 F.3d 1064, 1075 (7th Cir. 1998) (quoting United States v. Edwards, 36 F.3d 639, 645 (7th Cir. 1994)). Buchmeier now contends that his theory of defense instruction met these requirements, and therefore, the district court erroneously denied his proposed instruction. He further argues that the court's error denied him a fair trial because his counsel had specifically relied on this theory of defense in his opening statement and throughout the entire trial

only to have it precluded prior to the jury deliberating. The government concedes that the instruction Buchmeier presented to the court was an accurate statement of the law. It contends, however, that the district court properly concluded that there was no factual support in the record to justify the instruction. The government argues that the evidence at trial showed that Buchmeier's interaction with Schroeder was much more than a "mere association with those who may have possessed firearms." Additionally, the government asserts that there is no evidence in the record that Buchmeier "played the role of a finder and broker of firearms," or that he "brought a buyer and seller together."

While a defendant's theory of defense need only have "some foundation in the evidence, however tenuous," Irorere, 228 F.3d at 825 (citations omitted), we find that the district court correctly concluded that there was no evidence presented at Buchmeier's trial that supported his proposed theory of defense instruction. At oral argument, Buchmeier's counsel explained that there was only a "scintilla of evidence" in the record supporting the notion that Buchmeier "played the role of a finder or broker" of firearms. Although our review of the record indicates that even this description is a generous characterization of the evidence, we agree with the Ninth Circuit that "'[a] 'mere scintilla' of evidence supporting a defendant's theory . . . is not sufficient to warrant a defense instruction.'" United States v. Wofford, 122 F.3d 787, 789 (9th Cir. 1997) (quoting United States v. Morton, 999 F.2d 435, 437 (9th Cir. 1993)). There is likewise no evidence in the record to support the idea that Buchmeier's interaction with Schroeder and the other individuals mentioned above was a "mere association with those who may have possessed firearms." Thus, the district court properly refused to submit Buchmeier's proposed theory of defense instruction to the jury.

D.  Buchmeier's Request for Special Interrogatories

Buchmeier's final argument on appeal contests the district court's denial of his request that special interrogatory

verdicts be submitted to the jury for each firearm listed in the indictment. He claims that these special interrogatory verdicts were needed because each firearm charged is a separate element of a separate crime. Thus, Buchmeier argues that the jury should have been required to find him guilty beyond a reasonable doubt for each firearm. Additionally, Buchmeier asserts that because the special interrogatory verdicts were not submitted to the jury, he is unable to determine which firearm he was convicted of possessing and receiving. This result, he contends, is so manifestly unfair that it violates the Constitution's notions of due process and fundamental fairness. We do not agree.

The Supreme Court has explained that "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proven each element" of a crime. Richardson v. United States, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d (1999). Given our discussionregarding the appropriate unit of prosecution for sec. 922(g)(1) and sec. 922(j), we conclude that the district court correctly instructed the jury that it only needed to find that Buchmeier had possessed or received, depending on the charge, one of the firearms listed in each count in order to satisfy the elements of those violations. As we have explained, the focus of these provisions is upon the individual defendant and the actions taken by the defendant to acquire firearms. A convicted felon is to be prosecuted under sec. 922(g)(1) not for the number of firearms he possesses, but instead for each transaction or acquisition by which that defendant has attempted to arm himself. See, e.g., United States v. Oliver, 683 F.2d 224, 232-33 (7th Cir. 1982); see also United States v. Jester, 139 F.3d 1168, 1171 (7th Cir. 1998) ("Congress enacted sec. 922(g)(1) in order to keep firearms out of the hands of those persons whose prior conduct indicated a heightened proclivity for using firearms to threaten community peace and the 'continued and effective operation of the Government of the United States.'") (citation omitted). Likewise, a defendant receiving stolen firearms is to be prosecuted under sec. 922(j) not for each of the stolen firearms that the defendant receives in a single

transaction, but instead for each transaction or instance by which that defendant receives another stolen firearm or group of stolen firearms. See, e.g., McFarland v. Pickett, 469 F.2d 1277, 1278-79 (7th Cir. 1972). Thus, it is sufficient in this case that the jury was required to unanimously find that Buchmeier possessed one of the firearms listed in each of the counts of the indictment against Buchmeier./4

Buchmeier is correct in noting that the jury's verdict form did not inform him as to the specific firearms the jury found him to have possessed. Indeed, this general verdict required us to evaluate the sufficiency of the evidence for each firearm listed in the indictment when reviewing Buchmeier's claim that the evidence was insufficient to support his conviction. We also recognize the possibility of a situation where a defendant is convicted of one count of violating sec. 922(g)(1) but that such a large number of firearms are listed in the count that the defendant's inability to know which firearms he was convicted of having possessed creates such a burden on that defendant's ability to appeal his conviction that it would be problematic. However, we do not find such a situation in this case. Only three firearms were listed in Counts I and III, and seven firearms were listed in Counts IV and VI. Furthermore, the evidence presented at trial indicated that Buchmeier acquired these firearms in groups, through three transactions, further enabling Buchmeier to focus his efforts in challenging his conviction on appeal. Finally, the evidence indicating Buchmeier possessed these firearms came from a limited number of sources, primarily four witnesses, as is demonstrated by his challenge in this appeal to the sufficiency of the evidence. Therefore, Buchmeier's inability to know which firearms the jury found him to have possessed does not violate constitutional notions of due process.

III.  Conclusion

For the aforementioned reasons, we AFFIRM Buchmeier's conviction on all counts of the indictment.

FOOTNOTES

/1 Varying only slightly from the current version, the version of sec. 922(j) reviewed by the court also made it unlawful for any person to "receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, . . . which is a part of . . . interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen." McFarland, 469 F.2d at 1278.

/2 Section 922(h) prohibited "any person (1) . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Oliver, 683 F.2d at 232.

/3 At that time, sec. 1503 explained that:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, . . . in the discharge of his duty, . . . or corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Berardi, 675 F.2d at 897 n.3.

/4 Because the district court instructed the jury that it was required to unanimously agree as to which particular firearm Buchmeier acquired or received with regard to each count, we need not reach the issue of whether it would have been sufficient for the jury to have simply agreed that Buchmeier possessed at least one of the firearms listed in each count without agreeing which particular firearm he possessed. See United States v. Verrecchia, 196 F.3d 294, 298-301 (1st Cir. 1999) (holding that because a jury need only agree that a defendant possessed "a" firearm in order to find a defendant guilty of violating sec. 922(g)(1), a unanimity instruction was not required where defendant was charged with one count of violating sec. 922(g)(1) and multiple firearms were listed in that count).