NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 15, 2013
Decided March 18, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 12-1097

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 CR 234-2 |
| HAKIM JARADAT, *Defendant-Appellant.* | Amy J. St. Eve, *Judge.* |

**O R D E R**

Hakim Jaradat, a self-employed tax accountant, was arrested after securing false employment verification for a straw buyer's mortgage application. After a 6-day trial, a jury found Jaradat guilty of wire and mail fraud. *See* 18 U.S.C. §§ 1341, 1343. The district court calculated guidelines ranges of 12 to 18 months' imprisonment and 2 to 5 years' supervised release based on a criminal history category of I and a total offense level of 13 (a base offense level of 7 plus 4 levels for an intended loss exceeding $10,000 and 2 levels for use of a special skill). *See* U.S.S.G. §§ 2B1.1(a)(1), (b)(1)(B), 3B1.3. The court sentenced him to one day in prison and three years of supervised release with a special condition that 12 months be served in home detention. Jaradat has filed a notice of appeal, but appointed counsel asserts that the appeal is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Jaradat opposes counsel's motion. *See* Cir. R. 51(b). We confine our review to the potential issues identified in

counsel's facially adequate brief and Jaradat's response. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

Jaradat was targeted in early 2008 as part of "Operation Madhouse," an undercover investigation run by the Federal Bureau of Investigation to ferret out mortgage fraud. Before trial the government moved in limine to introduce evidence that Jaradat had prepared phony tax returns in both 2006 and 2008 as documentation for fraudulent mortgage applications. He fabricated the returns in 2008 just days after funds were dispersed on the fraudulent loan he facilitated with the false employment verification. Jaradat objected to use of the 2006 tax returns (though not the 2008 documents), but the district court ruled that both sets of fake returns could be offered to show intent and the absence of mistake because Jaradat had created them for similar mortgage-fraud schemes close in time to this one. *See* FED. R. EVID. 404(b).

At trial the government called the informant who paid Jaradat for the false employment verification and introduced English-language translations of their recorded Arabic conversations. According to the informant, the two first met in 2006, shortly after the informant began working for the FBI as part of Operation Madhouse. At the informant's request, Jaradat prepared tax returns to submit with a mortgage application, purportedly showing the informant's income for the previous two tax years. The informant testified that Jaradat supplied the income figures for the documents, explained that type-written documents made approval easier, told him to provide the lender with copies (not originals), and said that he would be able to provide fake check stubs as verification. These documents were never used as part of a mortgage application, but in 2008 the informant approached Jaradat again and asked him to obtain a false employment verification for a straw buyer. Jaradat paid an owner of a construction company to say that the straw buyer, an undercover FBI agent, had worked as a construction supervisor for three years. The lender approved a mortgage for $171,000 after contacting the construction company and "verifying" the straw buyer's work history. Jaradat's codefendant, a real estate agent, sent the mortgage and closing documents via FedEx to the lender, which then wired the money to the purported seller, another undercover agent. The FBI later returned the funds.

In his *Anders* submission, counsel first considers whether Jaradat could argue that the district court abused its discretion in allowing the jury to learn that he fabricated two tax returns for the informant in 2006. Counsel concludes that this contention would be frivolous, but Jaradat disagrees and proposes to argue that the evidence was irrelevant and unfairly prejudicial because of the two-year separation in time and asserted dissimilarity between fake tax returns and a fake employment verification. We agree with counsel. The district court reasoned that Jaradat's dealings with the informant in 2006 showed his intent and lack of mistake in providing false information for mortgage applications. *See* FED. R. EVID. 404(b). In both instances Jaradat provided false verification of the applicant's income, making the actions

sufficiently similar to show absence of mistake. *See United States v. Wheeler*, 540 F.3d 683, 691–92 (7th Cir. 2008); *United States v. Watts*, 535 F.3d 650, 659–60 (7th Cir. 2008); *United States v. Montani*, 204 F.3d 761, 768 (7th Cir. 2000). And two years is sufficiently close in time to the charged conduct. *See United States v. Harris*, 587 F.3d 861, 865 (7th Cir. 2009) (explaining that acts occurring within two years of crime were sufficiently close in time); *United States v. Ross*, 510 F.3d 702, 713 (7th Cir. 2007) (explaining that similar acts occurring within five to six years of crime were sufficiently close in time). Moreover, the district court instructed the jury to consider this evidence only as to motive, plan, intent, and absence of mistake, thus curing any potential prejudice the evidence may have caused. *See United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008); *United States v. Moore*, 531 F.3d 496, 500 (7th Cir. 2008).

Counsel next considers whether Jaradat could argue that the district court clearly erred in finding an intended loss above $10,000. *See* U.S.S.G. § 2B1.1(b)(1)(B). There were two conflicting estimates of the property's worth—an independent appraisal made three months before the loan application and a mortgage broker's opinion that a bank would approve a loan for up to $180,000. The judge reasoned that the earlier valuation was "truly independent" and thus the superior measure of the property's value. *See United States v. Radziszewski*, 474 F.3d 480, 487 (7th Cir. 2007). By subtracting the loan amount ($171,000) from the home's appraised value ($157,000), the court found that Jaradat had placed the bank at risk of losing $14,000 by providing false employment verification. *See id.* (concluding that intended loss in mortgage-fraud scheme is calculated by subtracting sale price at foreclosure from mortgage value); *United States v. Lane*, 323 F.3d 568, 585–86, 590 (7th Cir. 2003) (explaining that intended loss attributable to mortgage obtained by fraud was calculated by subtracting property's value from loan's amount); *United States v. Innarelli*, 524 F.3d 286, 290–91 (1st Cir. 2008) (same). Jaradat knew that the straw buyer had not worked as a construction supervisor for three years, so he took a significant gamble with the lender's money by providing false information that led it to approve the mortgage. *See Lane*, 323 F.3d at 590 ("The determination of intended loss under the Sentencing Guidelines therefore focuses on the *conduct of the defendant* and the objective financial risk to victims caused by that conduct."). Thus counsel correctly concludes that it would be frivolous to argue that the district court's factual finding of a loss exceeding $10,000 was clearly erroneous. *See Radziszewski*, 474 F.3d at 487; *Lane*, 323 F.3d at 585.

Counsel also concludes that it would be frivolous to challenge the district court's conclusion that Jaradat, as a tax accountant, used a special skill to significantly facilitate the commission or concealment of the offense. *See* U.S.S.G. § 3B1.3. Application Note 4 explains that a "special skill" is a skill not possessed by members of the general public and generally requiring substantial education, training or licensing; the note includes "accountants" in the list of examples. *Id.* § 3B1.3 cmt. n.4; *see United States v. Smith*, 332 F.3d 455, 458 (7th Cir. 2003). Jaradat is a trained accountant, and the district court determined that his tax-preparation skills—which he used to craft phony tax returns in 2008 soon after obtaining the employment

verification—made it easier to commit mortgage fraud. Those returns are relevant conduct because the plan had the same objective (obtaining a mortgage for a straw buyer), involved two of the same actors (Jaradat and the informant), and was carried out in the same manner (by submitting phony documents to "verify" income). *See* U.S.S.G. § 1B1.3(a)(2); *United States v. McKinney*, 686 F.3d 432, 436–37 (7th Cir. 2012); *Watts*, 535 F.3d at 658–59. Depending on the level of specialized knowledge required, tax preparation can be a special skill, *see United States v. Noah*, 130 F.3d 490, 500 (1st Cir. 1997) (explaining that tax accountant used special skill in preparing tax returns); *United States v. Fritzson*, 979 F.2d 21, 22–23 (2d Cir. 1992) (same); *but see United States v. Gormley*, 201 F.3d 290, 295–96 (4th Cir. 2000) (concluding that district court erred in finding that tax preparation as practiced by defendant was special skill), and Jaradat instructed the informant on how to provide phony tax documents in a way less likely to raise suspicion, making their mortgage-fraud scheme more likely to succeed, *see Smith*, 332 F.3d at 459; *United States v. Lange*, 312 F.3d 263, 270 (7th Cir. 2002). In any event, the district judge gave the shortest sentence she could possibly give (one day) and still impose supervised release, *see United States v. Goldberg*, 491 F.3d 668, 669 (7th Cir. 2007), so we would conclude that any arguable error in calculating the guidelines range was harmless, *see United States v. Foster*, 701 F.3d 1142, 1157–58 (7th Cir. 2012); *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008).

Counsel finally evaluates whether Jaradat could challenge his below-guidelines prison sentence as unreasonable and concludes that this potential claim would be frivolous. We agree. The district court considered Jaradat's arguments in mitigation and decided that one day, with credit for time served, was the appropriate sentence. Counsel has not identified any ground to rebut the presumption that this term is reasonable, *see Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Jones*, 696 F.3d 695, 699 (7th Cir. 2012); *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009), nor can we.

In his Rule 51(b) response, Jaradat proposes to argue that the district judge erred in admitting English-language transcripts of his recorded conversations with the informant. He also would contend that the court should have tried him separately from his codefendant so he could argue that his codefendant manipulated him. Because both Jaradat and the informant were born in Jordan, Jaradat asserts that the translator, who was raised in Syria, could not have understood their Jordanian colloquial expressions, though he does not identify any purported mistranslation. Translations are commonly used at trial, *see United States v. Khattab*, 536 F.3d 765, 767 (7th Cir. 2008); *United States v. Mansoori*, 304 F.3d 635, 665 (7th Cir. 2002), and Jaradat's lawyer had the chance to cross-examine the translator and could have prepared his own translation of the recordings, *see United States v. Cruz-Velasco*, 224 F.3d 654, 667–68 (7th Cir. 2000), so it would be frivolous to contend that the district court erred in admitting the translations. Jaradat's contention concerning severance is likewise frivolous. Jaradat did not renew his motion to sever at the close of evidence, so he has waived this argument. *See United*

*States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010); *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009).

The motion to withdraw is GRANTED, and the appeal is DISMISSED.