In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3481

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CURTIS W. SMITH,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 991—**George W. Lindberg,** *Judge*.

ARGUED APRIL 16, 2003—DECIDED JUNE 10, 2003

Before POSNER, COFFEY and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Curtis Smith is a truck driver with a two million mile accident-free driving record. Unfortunately, his record for theft-free driving is considerably less impressive. Smith pled guilty to one count of theft of interstate freight in violation of 18 U.S.C. § 659. He now raises several challenges to his sentence, and we vacate and remand for re-sentencing.

## I.

In early November 2001, Hirschbach Motor Lines hired Curtis Smith, a licensed commercial truck driver, to trans-

port a load of toys from a Hasbro toy distribution center in Massachusetts to a Wal-Mart store in Iowa. On November 2, 2001, Smith picked up more than $64,000 worth of toys from Hasbro Distribution. Because the value of the load and the tractor-trailer is relevant to Smith's sentencing, we add that the toys were being transported in a Hirschbach-owned semi-trailer, which was valued at approximately $21,000. Smith hauled the trailer with a semi-tractor also owned by Hirschbach, and valued at approximately $26,000. The cargo never arrived at its planned destination, however, because Smith pulled off the road at various points between Massachusetts and Iowa and sold toys off the back of the truck. He used the money from this ill-conceived venture to buy crack cocaine for personal consumption. He was apprehended in Bridgeview, Illinois on November 20, 2001, after a local resident called police to report that a man was selling toys from the back of a truck at 1:30 in the morning. At the time of his arrest, Smith was more than two weeks late for the scheduled delivery at the Iowa Wal-Mart. Hirschbach had tried to contact him along the way using the global positioning and text-messaging system installed in the truck, but Smith had disabled the system shortly after departing the Hasbro Distribution center.

Smith was charged with one count of theft of interstate freight and entered a blind guilty plea after he was unable to agree with the government on the value of the theft loss. The court determined that the amount of the loss should include the value of the tractor-trailer as well as the contents, a total of approximately $111,438. The court accepted the government's recommendations to depart upward three levels because Smith's criminal history category of VI under-represented his criminal past and the likelihood for recidivism. The court enhanced Smith's sentence an additional two levels because the theft was facilitated by special skill and training, namely Smith's

skill in driving commercial-sized trucks. Smith was credited with a two-level reduction in his sentence for acceptance of responsibility. The court imposed a special condition on Smith's period of supervised release, ordering him to relinquish his commercial driver's license and refrain from being employed as a truck driver. Finally, Smith was ordered to pay $51,245 in restitution, representing the value of the toys missing at the time the truck was recovered by law enforcement. All of this added up to 63 months in prison and three years of supervised release, plus restitution. Smith appeals.

## II.

On appeal, Smith contends that the district court erred in including the value of the tractor/trailer in the amount of the theft loss, that the court was obliged to grant a three-level rather than a two-level reduction for acceptance of responsibility under the circumstances, that the special condition of barring him from driving a truck was an excessive deprivation of liberty, and that the court erred in finding that truck driving is a special skill that significantly facilitated the crime.

## A.

Smith complains that the court erred in including the value of the tractor/trailer (for ease, we will call this the truck) in the amount of the loss because, he maintains, the evidence was insufficient to demonstrate an intent to steal the truck. Although Smith admitted that he intended to steal the contents of the truck, he made no such admission regarding the truck itself. He points to the fact that his own truck, a newer model, was being repaired at Hirschbach's facility while he was driving a Hirschbach loaner truck. Because his own truck was

essentially serving as collateral for Hirschbach's truck, he contends it is counter-intuitive to conclude that he intended to steal Hirschbach's truck. The district court's determination of the amount of loss is a question of fact that we review for clear error, although the application of the sentencing guidelines is a legal question that we review *de novo*. *United States v. Mei*, 315 F.3d 788, 792 (7th Cir. 2003); *United States v. Rosalez-Cortez*, 19 F.3d 1210, 1218 (7th Cir. 1994).

Although it is true that a rational person is unlikely to steal an older, loaner vehicle while the owner of the loaner is repairing his new vehicle, the court was not obliged to find that Smith was acting as a rational person would act. Smith, after all, was caught in the dead of night selling hot Mr. Potato Heads out of the back of a truck in order to support his crack cocaine habit. Moreover, Smith was more than two weeks late in delivering the truck and the goods to their intended destination, and he had disabled the truck's global positioning device. Having sold the contents of the truck, it was just as counter-intuitive to assume that he would return the empty truck to his employer with no explanation about the missing load of toys. Smith also fails to mention that he had only $4000 in equity in the truck he left behind for repairs at Hirschbach, considerably less than the estimated $47,000 market value of Hirschbach's truck. We cannot find that the district court erred in concluding that Smith intended to steal the truck as well as the contents. The amount of the loss was properly calculated to include the truck as well as the goods.

**B.**

The court imposed an enhancement under section 3B1.3 for the use of a special skill:

> If the defendant . . . used a special skill in a manner that significantly facilitated the commission or concealment of the offense, increase by **2** levels.

U.S.S. G. § 3B1.3. The commentary to the guideline explains that a "special skill" is a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. "Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, Commentary at ¶ 3. The court imposed this enhancement because Smith's thefts and the delay in detecting the thefts were facilitated by Smith's training and licensing as an over-the-road truck driver. Sentencing Tr. at 29. Smith now argues that truck driving, although admittedly more difficult than driving a sedan, is not a special skill. He maintains that his crime could have been committed by anyone able to open the back of a trailer, remove toys and hawk them on the street. He also urges us to find that, even if truck driving is a special skill, he did not use that skill in a significant way to facilitate his crime.

The government argues that Smith waived this objection, or at best forfeited it, and that we should review the enhancement for plain error. We believe Smith adequately preserved his objection by raising it in a *pro se* letter to the court, and then indicating at the sentencing hearing through counsel that he had no more objections other than the ones already argued. Although this was not an ideal method for preserving an objection, we believe both the court and the government were aware that Smith contested this point. *See, e.g., United States v. Sumner*, 265 F.3d 532, 538 (7th Cir. 2001) (written objection to PSR and argument at sentencing hearing sufficient to preserve issue for appeal, even in absence of objection to the sufficiency of the court's findings). We therefore review the district court's factual findings under section 3B1.3 for clear error, and we determine *de novo* the

legal meaning of "special skill." *United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994). As Smith concedes, we have previously held that the skills necessary to operate an eighteen-wheeler justify enhancement under this section. *Lewis*, 41 F.3d at 1214. "An over-the-road commercially-employed truck driver is required to have a special operator's license. Members of the general public would have more than a little trouble successfully maneuvering a loaded eighteen-wheeler along roads and through parking lots." *Id*. Smith offers no real reason why we should reconsider that holding now. *See also United States v. Mendoza*, 78 F.3d 460, 465 (9th Cir. 1996) (driving an eighteen-wheeler without any reported mishap over several years is a skill well beyond that possessed by the general public and constitutes a special skill under the guidelines).

The only question that remains then is whether Smith's special skill in operating an eighteen-wheeler significantly facilitated the commission or concealment of the crime. We cannot find that the district court clearly erred in answering this question in the affirmative. First, by Smith's own admission, his extraordinary skill in driving a truck, including his record of two million miles of accident-free driving, gave him access to the load of toys. As Smith himself explained to the court:

> I got 2 million miles accident-free—that's more than most people in here ever drive in their life—in a tractor trailer. That's why I get hired. That's why I can go right out the door and get hired now with a felony—with ten felonies under my belt. Because they look at my driving record. They don't look at the things I did . . . when I didn't drive. They look at how did I get from Point A to Point B. Did I damage a load? Did I tear up a car? Did I kill anybody on the route? That's what they're worried about. I'm the best driver you ever seen in your life for a tractor trailer.

Sentencing Tr. at 21. Smith's tragic and telling speech to the court was intended to explain that his driving skills were not related to his crimes, but rather that his drug addiction led to his propensity for theft. But in his explanation, he proved the district court's point. His special driving skills allowed him access to valuable cargo even though he had, by his own admission, ten felonies under his belt. His skills allowed him to drive the load away from its owner, disable the tracking device to conceal his whereabouts along the route, and pull off at selected stops to sell the goods he was hired to deliver. Without his special skills, he would not have had the access or the means to steal these goods and transport them between states. That is enough to justify the enhancement.

## C.

Smith next challenges the court's two-level reduction for acceptance of responsibility, maintaining that he was instead entitled under the Guidelines to receive a three-level reduction. Normally we review a district court's determination concerning a defendant's acceptance of responsibility for clear error. *United States v. Rosalez-Cortez*, 19 F.3d 1210, 1218 (7th Cir. 1994). Here, however, Smith inadvertently failed to raise this issue before the trial court and therefore we consider the issue forfeited and review it for plain error only. *United States v. Olano*, 507 U.S. 725, 732-34 (1993); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000). Section 3E1.1(a) of the Sentencing Guidelines directs the district court to decrease the offense level by two levels if the defendant clearly demonstrates acceptance of responsibility for his offense. If a defendant who qualifies under subsection (a) has an offense level of 16 or greater prior to the application of the two-level decrease, the court will grant an additional one-level decrease if:

the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

 (1) timely providing complete information to the government concerning his own involvement in the offense; or

 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently[.]

U.S.S.G. § 3E1.1(b).

The parties agree that Smith notified the government and the court of his intention to plead guilty at his first court appearance subsequent to arraignment and before a trial date had been set. The probation officer preparing Smith's PSR concluded that he had timely provided information to the government concerning his own involvement in the offense and that he had timely notified authorities of his intention to plead guilty. The probation officer inadvertently failed to credit Smith with the third point and neither the government nor counsel for Smith noticed the error at the time of sentencing. The government now concedes that Smith was entitled to the third point under section 3E1.1(b), and also concedes that the record does not clearly indicate that the error did not affect the sentence imposed. *United States v. Garrett*, 90 F.3d 210, 213 (7th Cir. 1996) (sentencing judge may not deny a third level decrease if stated conditions are met because guideline language is mandatory, not permissive). Once we have determined that the district court misapplied the Guidelines, a remand is appropriate unless we conclude, on the record as a whole, that the error was harmless. *See Williams v. United States*, 503 U.S. 193, 203 (1992). An error is harmless if it did not affect the district court's

selection of the sentence imposed. *Id.* We agree that the record here does not allow us to conclude that the error was harmless, and we therefore vacate Smith's sentence and remand for re-sentencing.

**D.**

On remand, the court should also clarify one of the special conditions of supervised release imposed on Smith. The government requested that Smith be precluded from employment as a commercial truck driver during the period of supervised release. The government sought this limitation for two reasons. First, Smith repeatedly abused his skills as a commercial truck driver to conduct criminal activities. Apparently, this was not the first time he absconded with a truck full of goods. Second, the government hoped this restriction would help Smith avoid falling back into his drug abuse habits because he would not have such a ready source of cash. In response to this request, the court ordered as a condition of supervised release that Smith relinquish his commercial driver's license, that he not obtain a new one and that he "not seek or obtain employment as a driver of a motor truck engaged in the delivery of freight or other goods." Sentencing Tr. at 33. In the Judgment in a Criminal Case issued two weeks later, the court listed the special condition thusly:

> The defendant is also ordered to surrender his CDL driver's license. The defendant is prohibited for ever [sic] obtaining a CDL driver's license. The defendant is prohibited from ever being employed as a truck driver.

R. 31 at 4. Smith complains that these restrictions are unrelated to the offense of conviction and overbroad in scope and duration. The restriction prohibits him from

driving even a garbage truck or his own truck for his own business, for example.

We review for abuse of discretion the district court's imposition of a special condition of supervised release. *United States v. Angle*, 234 F.3d 326, 346 (7th Cir. 2000), *cert. denied*, 533 U.S. 932 (2001). A district court may impose special conditions of supervised release that it deems appropriate so long as the conditions are reasonably related to (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. U.S.S.G. § 5D1.3(b); *Angle*, 234 F.3d at 346; *United States v. Schave*, 186 F.3d 839, 841 (7th Cir. 1999). Moreover, the conditions must involve no greater deprivation of liberty than is reasonably necessary to achieve these goals and must be consistent with any pertinent policy statements issued by the Sentencing Commission. U.S.S.G. § 5D1.3(b); *Angle*, 234 F.3d at 346; *Schave*, 186 F.3d at 841. The condition imposed here was specifically authorized by section 5F1.5 of the Sentencing Guidelines:

> (a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:
>
> > (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

U.S.S.G. § 5F1.5.

In imposing this special condition, the court commented, "The court is well aware that this deprives you of your customary livelihood." Sentencing Tr. at 33. The court was nonetheless convinced the restriction was necessary. Having previously commented that there was a "virtual certainty that [Smith] will continue to commit crimes until [he] die[s]," and that the purpose of the sentence was to keep Smith "away from society for the longest possible time under the law," the court found further reasons to impose the condition. Sentencing Tr. at 29. In particular, the court noted that Smith was a danger on the road because of his admitted use of crack cocaine and because he had suffered two strokes. Sentencing Tr. at 33.

The connection between Smith's employment as a commercial truck driver and his crime of theft of interstate freight (the very freight he was hired to transport) is so obvious that we will not comment on it further. Suffice it to say that "a reasonably direct relationship existed between the defendant's occupation . . . and the conduct relevant to the offense of conviction." U.S.S.G. § 5F1.5. As to the remaining factors under section 5F1.5, however,

the district court did not make any express findings. The absence of a finding that the restriction was necessary to prevent Smith from engaging in the same conduct is troubling in light of the district court's seeming reliance on factors unrelated to the offense of conviction. For example, the court seemed most concerned that Smith was a danger on the road not because he was a thief but because he may be driving under the influence of drugs or because his strokes may have adversely affected his ability to drive safely. The record is devoid of any evidence that Smith drove under the influence or that his strokes affected his driving ability. In any case, he was not charged with driving under the influence; he was charged with theft of interstate freight. The guideline requires the court to find that the employment restriction is necessary to keep the defendant from engaging in criminal conduct similar to that for which he was convicted. The government argued that this was the appropriate reason to restrict Smith's access to trucks, citing other instances when Smith committed thefts related to his employment. The court may have accepted and relied upon the government's argument, but the record is unclear on this point.

Moreover, the record is unclear regarding the length of time the restriction is in effect and the necessity for the duration of the restriction. The written judgment specifies that Smith is "prohibited from ever being employed as a truck driver" and that the "defendant is prohibited for ever [sic] obtaining a CDL driver's license." R. 31 at 4. The government concedes that the district court's phrasing was ambiguous but maintains that in reading the record as a whole, the court meant to apply the special conditions only to the term of supervised release. The court should clarify this point on remand, and should also make appropriate findings regarding the necessity for the duration and scope of any employment restriction. We are not,

by any means, finding that a reasonably defined restriction could not be supported, but rather only that the record is currently inadequate to support a restriction of indeterminate length that may have been based on factors outside those approved by the guidelines.

VACATED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*