**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM ALLEN TURNER,

Defendant-Appellant.

No. 03-5114

(N.D. Oklahoma)

(D.C. NO. 00-CR-113-C)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BALDOCK** , and **HARTZ** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* FED. R. APP. P. 34 (a)(2); 10TH CIR. R. 34.1(G). The case

therefore is ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

William Allen Turner pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344(1) on January 25, 2001. On November 14, 2002, Mr. Turner was sentenced to zero months' imprisonment and five years' supervised release, ordered to make restitution in the amount of $96,793.99, and assessed $100.00. In March 2003, the United States Probation Office filed a "Petition for Action of Supervised Release," alleging that Mr. Turner violated the conditions of his release by failing to pay restitution, leaving the judicial district without permission, failing to submit required monthly reports, failing to truthfully answer all inquiries from the probation officer, and failing to provide the probation officer with access to all financial information. A "Superseding Petition for Action of Supervised Release," filed in April 2003, alleged that, in addition to the violations listed above, Mr. Turner also attempted to obtain a line of credit without first consulting the probation officer.

Mr. Turner filed a motion to dismiss the Petition for Action of Supervised Release, arguing that his original sentence was illegal because a supervised release can only follow a period of imprisonment. The district court denied Mr. Turner's motion to dismiss and found, after a full evidentiary hearing, that Mr. Turner had violated the terms and conditions of his supervised released. On June 23, 2003, the court sentenced Mr. Turner to twelve months' imprisonment and forty-eight months' supervised release and reimposed restitution. Mr. Turner

appeals the judgment and sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Prior to being charged with bank fraud, Mr. Turner was self-employed as a roofing contractor. In 1999, Mr. Turner's roofing business declined due to a variety of factors, including slow payments from customers, bad weather, a poor economy, and Mr. Turner's failing health. Apparently in an effort to make debt and payroll payments, Mr. Turner knowingly initiated a check kiting scheme. From on or about February 1, 1999, to on or about March 31, 1999, he defrauded three Oklahoma financial institutions, ultimately causing a total loss of approximately $290,000.

Mr. Turner has been in poor health for several years. After pleading guilty to bank fraud in violation of 18 U.S.C. § 1344(1), he began experiencing debilitating health problems associated with severe, chronic coronary disease. Mr. Turner's heart condition caused his sentencing to be delayed several times. He was placed on a heart transplant list in August 2001, suffered a heart attack in November 2001, and underwent a coronary bypass graft procedure the next year. Following these health-related delays, the district court finally sentenced Mr. Turner on November 14, 2002. Mr. Turner moved for a downward departure

based on his poor health, and the government agreed such a departure was warranted. The district court granted the motion for downward departure and sentenced Mr. Turner to zero months' imprisonment and five years' supervised release, despite the fact that the Sentencing Guidelines provided a range of twelve to eighteen months' imprisonment based on Mr. Turner's total offense level of thirteen and his criminal history category of I. Rec. vol. II, at 17 (Presentence Investigation Report, approved Oct. 28, 2002). Mr. Turner did not appeal his conviction or sentence.

Mr. Turner's supervised release included two mandatory conditions of supervision, sixteen standard conditions, and three additional conditions. The government alleged that Mr. Turner violated six of these conditions: 1) he was $9,000 in arrears on his restitution as of April 2003; 2) he left the state of Oklahoma and traveled to Amarillo, Texas on December 6, 2002, without first obtaining an interstate travel permit from the United States Probation Office; 3) he did not submit mandatory monthly reports for the months of December 2002, and January, February, and March 2003; 4) he repeatedly falsely denied having a roommate in violation of his obligation to truthfully answer all inquiries by the probation officer; 5) he attempted to open a line of credit with Moody's Jewelry to facilitate the purchase of a $20,000 ring set for his girlfriend without obtaining the permission of the Probation Office to engage in a credit transaction; and 6) he

failed to provide the Probation Office with requested financial and accounting records.

In his motion to dismiss, Mr. Turner argued that his original sentence was illegal because a supervised release can only be imposed following a period of imprisonment and that, consequently, his supervised release could not be revoked. He also argued that any violations of his supervised release were technical and minor in nature and did not merit imprisonment. After a full evidentiary hearing, the district court found that Mr. Turner had violated the conditions of his supervised release. At a new sentencing hearing on June 23, 2003, the court sentenced Mr. Turner to twelve months' imprisonment and forty-eight months' supervised release and reimposed the restitution and special assessment requirements. Mr. Turner now appeals his sentence.

On appeal, Mr. Turner alleges that: 1) his original sentence was illegal because a supervised release can only follow a sentence of imprisonment; 2) the district court should not have imposed a new prison sentence for Mr. Turner's violations of his supervised release; 3) the district court erred by denying him the right to engage in self-employment during his supervised release; and 4) the district court erred by failing to give him advance notice of the restriction on self-employment.

## II. DISCUSSION

**A. Legality of the Original Sentence**

In arguing against the revocation of his supervised release, Mr. Turner challenges the legality of his original sentence. He argues that a sentence of zero months' imprisonment and five years' supervised release is illegal because supervised release can only be imposed following a period of initial imprisonment. Both Mr. Turner and the government concede that the first part of the original sentence is legal, as we have explicitly upheld a sentence of zero months' imprisonment. *See United States v. Elliott*, 971 F.2d 620, 621 (10th Cir. 1992) ("We conclude that a sentence of zero months does not literally violate the prohibition on probation in 18 U.S.C. § 3561(a)(1).").

The United States Code and the Sentencing Guidelines suggest that a period of imprisonment must proceed a supervised release. *See* 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release *after imprisonment*.") (emphasis added); U.S.S.G. § 5D1.1 ("(a) The court shall order a term of supervised release *to follow imprisonment* when a sentence of imprisonment of more than one year is imposed, or when required by statute. (b) The court may order a term of supervised release *to follow imprisonment* in any other case.")

(emphasis added).  Based on this language, the Second Circuit has held that "[i]t is clear that supervised release can never be imposed without an initial period of imprisonment."  *United States v. Thomas*, 135 F.3d 873, 875 (2d Cir. 1998).  However, we need not decide at this time whether § 3583(a) and U.S.S.G. § 5D1.1 compel the conclusion that supervised release presupposes a period of imprisonment because we find that Mr. Turner waived his right to challenge the legality of his sentence by failing to raise the issue on direct appeal.

"In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."  FED. R. APP. P. 4(b)(1)(A).  The court originally sentenced Mr. Turner on November 14, 2002; the judgment was entered on November 22, 2002.  Mr. Turner did not file an appeal of his sentence within the ten-day period.  He asserts that he is now making a direct attack on the legality of the sentence, but such an attack is clearly time-barred under the Federal Rules of Appellate Procedure.

Mr. Turner relies on the Second Circuit opinion in *United States v. Thomas*, in which the defendant successfully challenged the legality of her original sentence despite having failed to raise the issue on direct appeal.  *Thomas* is distinguishable from this case, however, because in *Thomas* the government conceded the permissibility of the challenge.  135 F.3d at 874.  Here, the

government argues that Mr. Turner's challenge to the legality of his sentence is barred due to his failure to raise the issue on direct appeal.

Alternatively, Mr. Turner's challenge to his original sentence can be viewed as a collateral attack. Mr. Turner contends that his challenge is not collateral in nature because he is "directly" attacking the revocation of his original sentence. The government posits that "[w]hen the Probation Office sought to revoke the supervised release portion of the sentence, [Mr. Turner] did challenge the sentence collaterally" and that "[i]n doing so, he, in effect, made a motion to the district court pursuant to 28 U.S.C. § 2255." Aple's Br. at 18. However, Mr. Turner's argument cannot succeed even if he did pursue this issue through a collateral challenge, as his failure to challenge the sentence on direct appeal severely limits his ability to raise the issue collaterally.

"Generally, a movant is barred from raising an alleged error affecting his conviction or sentence for the first time on collateral review unless he can show both cause for the default and actual prejudice."[1] *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002); *see also United States v. Frady*, 456 U.S. 153,

---

[1] A defendant can also be excused from failing to raise a challenge on direct appeal by showing that the error has resulted in a fundamental miscarriage of justice. *See United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996). The miscarriage of justice exception does not apply in this case because Mr. Turner "has not made a colorable showing of factual innocence." *Id.*; *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (noting that the miscarriage of justice exception is "explicitly tied" to defendant's innocence).

167 (1982) ("[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains.").

> A movant can show cause for the procedural default if he can demonstrate that his claim was so novel that its legal basis was not reasonably available to counsel. Cause can also be established by showing that counsel rendered constitutionally ineffective assistance. Additionally, the § 2255 movant who challenges his conviction can overcome the procedural bar if he can demonstrate that the constitutional error has probably resulted in the conviction of one who is actually innocent.

*Wiseman*, 297 F.3d at 979 (internal citations and quotation marks omitted).

Mr. Turner has not attempted to show cause for failing to raise the issue on direct appeal or actual prejudice resulting from the error. Notably, he actively sought the sentence he now claims is illegal by filing a sentencing motion asking for "a downward departure of five levels to a level 8, which would permit the Court to impose a sentence of *zero-months* custody *followed by Supervised Release*." Aplt's Br. at 12 (quoting Defendant's Sentencing Motion at 23). His zero-month sentence was far below the twelve- to eighteen-month range provided in the Sentencing Guidelines and resulted from the district court's concern for his health and desire to facilitate rehabilitation. *See* Rec. vol. 1, doc. 111, at 1 (Order, filed June 11, 2003) ("At sentencing, the Court granted the government's motion for a downward departure on the basis of Defendant's serious medical

condition."). Mr. Turner clearly had no intention of challenging the sentence until he found himself back in court for violating the terms of his supervised release. For these reasons, we hold that Mr. Turner's challenge to the legality of his original sentence is barred by his failure to timely raise the issue on direct appeal.

## B. Appropriateness of the New Prison Sentence

Mr. Turner argues that any violations of his supervised release were "technical or non-willful" and should not have resulted in the revocation of his supervised release and the imposition of a new prison sentence. Aplt's Br. at 15. The government's Petition for Action of Supervised Release listed six separate violations of the terms and conditions of the supervised release committed by Mr. Turner. At the evidentiary hearing on the revocation of the supervised release, the district court found that "[t]he testimony clearly supports the violations and failure to comply with the reporting [requirements], leaving the state without permission, failure to file, [and failure to] provide the financial statements as requested by the probation officer." Rec. vol. III, at 94 (Tr. of Revocation Hr'g, dated May 29, 2003). The court went on to note that "[t]he failure to pay restitution also is a failure" to comply with the terms of the supervised release. *Id.*

"This court reviews a district court's decision to revoke supervised release for abuse of discretion. Legal questions relating to the revocation of supervised

-10-

release are reviewed de novo." *United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001) (internal citations omitted). "The district court must find by a preponderance of the evidence that the defendant violated a condition of his supervised release." *Id*. (internal quotation marks omitted).

Mr. Turner characterizes each of the six violations alleged by the government as either misunderstandings or non-willful acts. In response to the allegations, he argues: 1) that he did not pay restitution due to lack of funds; 2) that he did not realize that he lacked permission to leave the state on a business trip and that he reported back to the Probation Office and submitted hotel receipts from the trip upon his return; 3) that his failure to submit monthly reports was due to his poor health; 4) that he denied having a roommate because he thought of the alleged roommate as a caretaker; 5) that his transaction with Moody's Jewelry involved bartering for roofing services and was therefore not a credit transaction; and 6) that he did not submit requested financial documents because he was too sick to dig through the boxes to find them. The district court heard and rejected each of these excuses after a thorough revocation hearing involving six witnesses. The court chose not to credit Mr. Turner's testimony, concluding "[i]t seems somewhat confusing or a mystery that Mr. Turner has a fiancee, he was going to buy a $20,000 ring but he was so depressed that he can't work, he can't make a report, [and] he can't get it to the probation office. In fact, it's so conflicting that

it's not believable." Rec. vol. III at 94-95. The district court did not abuse its discretion in drawing such a conclusion.

As Mr. Turner points out, his offenses consisted entirely of Grade C violations,[2] the least serious of the three grades of supervised release violations. However, a district court does have the discretion to revoke a defendant's supervised release and sentence him to a term of imprisonment for a Grade C violation. *See* 18 U.S.C. § 3583(e)(3). The court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release . . . if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release.

*Id.*; *see also* U.S.S.G. § 7B1.3(a)(2) (policy statement) ("Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision."). Thus, while the district court could have chosen to extend the term of Mr. Turner's supervised release rather than sentencing him to prison time, the court was well within its discretion to revoke the release despite the fact that the violations all fell within the Grade C category.

---

[2] A "Grade C" violation is defined as "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3).

We recognize that Mr. Turner's twelve-month prison sentence does exceed the range suggested in the Sentencing Guidelines. *See* U.S.S.G. § 7B1.4(a) (policy statement) (recommending a sentence of three to nine months' imprisonment for Grade C violations of supervised release committed by defendants with a criminal history category of I). However, his sentence is well within the statutory maximum of thirty-six months' imprisonment. *See* 18 U.S.C. § 3583(e)(3). We have previously held that "the policy statements regarding revocation in Chapter 7 of the U.S.S.G. are advisory rather than mandatory in nature." *United States v. Lee*, 957 F.2d 770, 773 (10th Cir. 1992); *see also United States v. Brooks*, 976 F.2d 1358, 1360 (10th Cir. 1992) (affirming a sentence exceeding the range suggested in U.S.S.G. § 7B1.4(a)). As in *Lee* and *Brooks*, the sentencing judge demonstrated awareness of the range recommended in U.S.S.G. § 7B1.4(a), *see* Rec. vol. V, at 4 (Sentencing Tr., dated June 23, 2003), but chose to sentence Mr. Turner to a longer twelve-month term of imprisonment as a "result of the defendant's ongoing pattern of violations which precluded the probation office from effective supervision." *Id.* at 5. Given the numerous violations committed by Mr. Turner, we find that the sentence imposed by the district court was reasonable.

**C. Appropriateness of the Occupational Restriction**

Mr. Turner's new supervised release, to follow his twelve-month prison

sentence, contains a special condition requiring him to "refrain from any form of self employment during the term of supervised release." Rec. vol. I, doc. 115, at 3 (Judgment, dated July 1, 2003). He contends that the district court wrongfully imposed this serious occupational restriction, that it is "unreasonable,"and, curiously, that it "will not prohibit him from engaging in bank fraud." Aplt's Br. at 21.

"The district court generally enjoys broad discretion in setting a condition of supervised release." *United States v. Erwin*, 299 F.3d 1230, 1232 (10th Cir. 2002). We review the imposition of such conditions for abuse of discretion. *Id.* The sentencing court has the statutory authority to

> order, as a further condition of supervised release, to the extent that such condition–
>
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
>
> any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate.

18 U.S.C. § 3583(d). Section 3563(b)(5) authorizes the court to order, as a condition of supervised release, that the defendant

> refrain, in the case of an individual, from engaging in a specified

-14-

occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances.

18 U.S.C. § 3563(b)(5). Prior to imposing an occupational restriction, the court must determine that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

U.S.S.G. § 5F1.5(a).

The plain language of the United States Code and the Sentencing Guidelines clearly requires a connection between the occupational restriction and the underlying offense for which the defendant was convicted. Mr. Turner pleaded guilty to defrauding three financial institutions with which he held checking accounts through his roofing business. After his initial sentencing, he failed to provide information about his business activities to the probation officer in violation of the terms of his supervised release. Based on these connections, the district court acted well within its discretion when it concluded that Mr. Turner's occupation as a self-employed roofer bears "a reasonably direct relationship" to his offense of bank fraud, as required by 18 U.S.C. § 3583(d) and U.S.S.G. § 5F1.5(a). *See United States v. Smith*, 332 F.3d 455, 461 (7th Cir.

2003) (holding that "[t]he connection between [defendant's] employment as a truck driver and his crime of theft of interstate freight" was sufficiently "obvious" for purposes of U.S.S.G. § 5F1.5(a)(1)); *cf. Erwin*, 299 F.3d at 1232-33 (holding that the requirement of U.S.S.G. § 5F1.5(a)(1) was not satisfied where the district court restricted defendant's commercial fishing license after he pleaded guilty to an unrelated possession of ammunition offense).

Mr. Turner also argues that the district court failed to make findings regarding the necessity of the occupational restriction. In *United States v. Smith*, although the Seventh Circuit held that the connection between commercial truck driving and the crime of conviction (the theft of the very freight defendant was hired to transport) was "reasonably direct" for purposes of imposing an occupational restriction, it remanded the case in part because the district court failed to make "a finding that the restriction was necessary to prevent [defendant] from engaging in the same conduct." 332 F.3d at 461-62. We agree that such findings are important and encourage district courts to make express findings concerning the necessity of occupational restrictions. However, this case is easily distinguishable from *Smith*, as much of the Seventh Circuit's concern in that case stemmed from the district court's "reliance on factors unrelated to the offense of conviction," *id.*, a concern indisputably not present here. Moreover, in *Smith*, the district court imposed an occupational restriction of unspecified duration; in this

case, the district court explicitly limited the duration of the occupational restriction to the period of supervised release.

We hold, based on the facts of this case, that the district court provided an adequate basis for the restriction on self-employment. The court's belief in the necessity of this restriction was reflected at the sentencing hearing, where the court stated in response to Mr. Turner's objection to the occupational restriction, "[w]e are going to protect the public this time." Rec. vol. 5, at 7. This statement, when considered alongside Mr. Turner's failure to submit to less restrictive attempts to monitor his business activities during his initial supervised release, leads us to conclude that the district court was within its discretion to find that "imposition of such a restriction is reasonably necessary to protect the public." U.S.S.G. § 5F1.5(a)(2). *See United States v. Choate*, 101 F.3d 562, 566 (8th Cir. 1997) (upholding a prohibition on self-employment because it "seems a reasonable way to protect the public" from defendant's business-related wire fraud).

Contrary to Mr. Turner's characterization of this issue, the restriction on self-employment will not necessarily prohibit him from earning a living as a roofer. He remains free to work for others, provided he does not continue to run his own roofing business. While we recognize that this restriction is significant, the district court determined that it is necessary to prevent Mr. Turner from

continuing to engage in business-related bank fraud. We hold that both requirements of U.S.S.G. § 5F1.5(a) have been satisfied, and that the district court was, therefore, within its discretion in imposing the restriction on self-employment.

**D. Lack of Advance Notice of the Occupational Restriction**

Mr. Turner also claims that the occupational restriction was unreasonable because he did not receive advance notice of the restriction in the presentence report. He contends that the occupational restriction constitutes an upward departure from the Sentencing Guidelines and therefore requires advance notice under *Burns v. United States*, 501 U.S. 129 (1991). *See id.* at 136 ("[T]he textual and contextual evidence of legislative intent indicates that Congress did not intend district courts to depart from the Guideline *sua sponte* without first affording notice to the parties.").

The restriction on self-employment imposed on Mr. Turner is not an upward departure; rather, it is among the recommended conditions of supervised release set forth in the Sentencing Guidelines. *See* U.S.S.G. § 5F1.5. In that sense, this case is easily distinguishable from *Burns*, in which the court sentenced the defendant to a term of imprisonment exceeding the maximum sentence reflected in Guidelines and the presentence report. *See* 501 U.S. at 132-35.

This case is also distinguishable from *United States v. Bartsma*, 198 F.3d

1191, 1199-1200 (10th Cir. 1999), in which we extended the reasoning of *Burns* to require notice prior to imposing a requirement that a defendant register as a sex-offender as a special condition of supervised release. Our limited holding in *Bartsma* is evidenced by our narrow conclusion that "the *Burns* rationale applies when a district court is considering imposing a sex offender registration requirement as a special condition of supervised release, and the condition is not on its face related to the offense charged."[3] *Id.* at 1199-1200. As the First Circuit has recognized, "requiring registration as a sex offender is different, in type and kind, from any of the usual conditions attached to supervised release." *United States v. Brown*, 235 F.3d 2, 4 (1st Cir. 2000). We later noted the limits of the *Bartsma* holding and emphasized that "[b]y implication, presentence notice is not required for some other conditions of release–perhaps most conditions." *United States v. Barajas*, 331 F.3d 1141, 1144 (10th Cir. 2003) (collecting cases); *see also United States v. Mills*, 959 F.2d 516, 518 (5th Cir. 1992) ("We do not believe it to be in the interest of justice . . . to extend the notice requirements of *Burns* to cases where the defendant's term of confinement is not at stake. Requiring trial judges to give prior notice of their intent to impose an occupational restriction would only further encumber the lengthy sentencing

---

[3] The defendant in *Bartsma* was convicted of possession of a firearm by a convicted felon, an offense having no direct nexus to the sex offender registration requirement. 198 F.3d at 1194.

-19-

process without adding anything to defendants' existing procedural protections.").

In any event, Mr. Turner's challenge must fail because he had constructive notice of the occupational restriction. As in *Barajas*, "the challenged condition [is] among the recommended conditions set forth in the Sentencing Guidelines, and the factual predicates for [its] imposition were fully addressed in the PSR." 331 F.3d at 1144; *see also Brown*, 235 F.3d at 4 ("[T]he guidelines contemplate (and give the appellant constructive notice) that the sentencing court will tailor supervised release conditions to fit the circumstances of the offense and the characteristics of the offender."). "Consequently, a defendant rarely, if ever, will be able to claim unfair surprise when the sentencing court establishes the conditions of supervised release." *Id.*

Both 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(e)(4) authorize the imposition of an occupational restriction as a condition of supervised release. As such, the challenged restriction is "among the discretionary conditions of supervised release *to which all defendants are alerted*." *Barajas*, 331 F.3d at 1145 (quoting *United States v. Lopez*, 258 F.3d 1053, 1056 (9th Cir.2001)) (emphasis added by *Barajas*). We therefore conclude that the district court did not wrongfully deprive Mr. Turner of notice of the restriction on self-employment.

## III. CONCLUSION

We AFFIRM the judgment of the district court.


Entered for the Court,


Robert H. Henry
Circuit Judge