NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 20, 2011
Decided November 22, 2011

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-1372

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> JOHN HEMPHILL, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 1:09-cr-00840-1 <br><br> William J. Hibbler, <br> *Judge.* |

**O R D E R**

John Hemphill was indicted for mail fraud and false impersonation of a federal officer after conducting a multi-year scheme in which he claimed ownership of certain properties as a "receiver" for the federal government, filed fraudulent deeds with the Cook County Recorder of Deeds ("CCRD"), and duped unsuspecting buyers into paying him for properties that he had no authority to convey. He proceeded to trial pro se, with the assistance of appointed stand-by counsel, and a jury convicted him on both counts.

On appeal, Hemphill argues that he is entitled to a new trial because the district court took judicial notice of the non-existence of certain laws and legal citations referenced in documents that Hemphill filed with the CCRD and failed to instruct the jury on the meaning of judicial notice until final instructions were given. But we find that the court committed no

error. He also challenges his sentence, arguing that the court considered unreliable evidence when calculating the intended loss of his crimes.[1] But because there was sufficient evidence to support Hemphill's conviction and the district court properly calculated the intended loss, we affirm.

## I. BACKGROUND

In October of 2002, Hemphill incorporated two businesses in Illinois: United States Receivers Caretakers Association ("USRCA") and United States Mortgage Release Corporation ("USMRC"), listing himself as president and secretary. Unfortunately, Hemphill used these misleadingly-named companies to perpetrate a rather elaborate fraud. His scheme involved first claiming that certain properties in Illinois had been seized by the federal government and taking possession of the properties as the government's "receiver," then filing fraudulent transfer deeds with the CCRD, and finally attempting to turn a profit by selling the properties. Between 2002 and 2009, when he was indicted in this case, Hemphill filed dozens of fraudulent deeds with the CCRD, typically including one deed purporting to transfer a property from its rightful owner to USRCA or USMRC, and then another transferring the property from the company to an unsuspecting third-party purchaser.

During the summer of 2009, the United States Postal Inspection Service and the United States Department of Housing and Urban Development began investigating Hemphill after receiving a number of complaints about him. One complainant, a company named Atlas Oil, charged that it received a letter at its office in Michigan, sent via U.S. Mail and postmarked in Chicago on May 14, 2009, claiming that Hemphill was the rightful titleholder for a property that Atlas Oil had recently purchased. During a conversation between Hemphill and Eric Kociba, an attorney for Atlas Oil, Hemphill claimed to be a federal "receiver" who took the property pursuant to a federal drug forfeiture. Atlas Oil later noticed that two deeds related to the property had been filed with the CCRD, one fraudulently conveying the property to USRCA, and the other transferring it from USRCA to Abul and Sabera Iqbaluddin (the Iqbaluddins).

On September 3, 2009, Postal Inspector Richard Flowers, working undercover, met with Hemphill at the USRCA office to express his interest in obtaining a property located on South Paulina Street in Chicago (the "Paulina property"). Flowers gave Hemphill's secretary a $500

---

[1] Hemphill initially appealed the district court's characterization of two prior state convictions – one for forgery, and the other for theft by deception – as criminal history rather than conduct relevant to the instant offenses. Facing the prospect of a higher guideline range on remand, however, Hemphill decided to withdraw that argument. So, we do not address it.

cashier's check as a down payment, and in return received a USRCA receipt, which Hemphill signed, indicating a $5,000 remaining balance, payable over the next six months. A few weeks later, a "release deed" prepared by USRCA was filed with the CCRD. The document purported to release the "mortgage claim" of Deutsche Bank on the Paulina property.

On October 14, when Flowers went to the USRCA office he gave Hemphill two cashiers checks for $2,750 each, payable to the order of USRCA. In return, Hemphill gave Flowers a "special warranty deed," which purportedly transferred the Paulina property's title from Deutsche Bank Trust Company. That day, federal agents arrested Hemphill, and executed a search warrant on the USRCA office. They found, among other things, copies of letters that Hemphill sent to various banks and property owners claiming that their properties had been seized by the federal government. Of particular note, the agents obtained copies of letters addressed to Atlas Oil, and to a real estate agent, Andre Bennett, whom Citibank had authorized to sell a property that Hemphill claimed had been seized.

During Hemphill's trial, the government moved the court to take judicial notice of the fact that the laws and legal citations referenced in the documents that Hemphill filed with the CCRD did not exist.[2] Hemphill objected, arguing that doing so would pose the risk that the jury would draw an improper inference, and his stand-by attorney requested that the court inform the jury that it was not offering an opinion on those issues and that Hemphill was presumed innocent. The district court overruled Hemphill's objection and denied his stand-by counsel's request. However, the court did give the following in its final instructions to the jury: "I have taken judicial notice of certain facts that may be regarded as matters of common knowledge. You may accept those facts as proved, but you are not required to do so." The jury found Hemphill guilty.

At sentencing, the district court calculated the intended loss of Hemphill's crimes at $773,050. Over Hemphill's objection, the court attributed $600,000 in that amount for Hemphill's offer to the Iqbaluddins to "modify" the mortgage on one of their commercial properties and to reduce the principal balance from $1.6 million to roughly $600,000, with all future payments made directly to him. The court also credited the statements that Sabera Iqbaluddin made to the probation officer responsible for Hemphill's Presentence Report ("PSR") about Hemphill's offer to modify her loan, and a receipt she provided that appeared

---

[2] At issue were the following citations: (1) "{LR} CH APP 183/190/35 LI CH 376. /14LT 208 12 Jur (NS) 281/1WR"; (2) "{LR} CH APP 183/190/35 LI CH 376. /14LT 208 12 Jur (NS)"; (3) "penal code section 708.620, 708.510 or penal code 186.11"; (4) "abandon building prevention act, Section 60icls 1/85-50"; (5) "United States Exemption Act"; and (6) "1908 141 App."

on USRCA letterhead and memorialized a $3,500 payment and "remaining balances" in excess of $600,000. Inclusion of this amount in the loss calculation increased Hemphill's offense level by 14 levels, so Hemphill received a 90-month term of imprisonment for the fraud, and a concurrent 36-month term for the false impersonation. This appeal followed.

## II. ANALYSIS

Hemphill argues that the court committed reversible error by taking judicial notice of the non-existence of the legal citations in the deeds and other documents that he filed with the CCRD after the government introduced into evidence copies of such documents. He also asserts that the court should have immediately given the judicial notice instruction, which explained that the court offered no opinion on the facts being noticed and that Hemphill was presumed innocent. We review the district court's decision to take judicial notice, and its refusal to provide the instruction Hemphill requested, for abuse of discretion. *United States v. Martin*, 618 F.3d 705, 735 (7th Cir. 2010); *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

It is well settled that courts may take judicial notice of common knowledge and matters of public record not subject to reasonable dispute, such as state statutes and city ordinances. FED. R. EVID. 201(b); *see also Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). Here, whether the citations in question referred to actual federal, state, or local laws is not subject to reasonable dispute. The district court granted Hemphill an opportunity to proffer copies of the disputed laws, which Hemphill failed to produce. And while the court did not immediately comply with Hemphill's request to instruct the jury, it did include our circuit's pattern criminal instruction 1.02 on judicial notice in the final instructions to the jury at the close of the evidence. *See* PATTERN CRIMINAL FEDERAL JURY INSTRUCTIONS FOR THE SEVENTH CIRCUIT 1.02 (1999). The district court did not abuse its discretion by taking judicial notice of the non-existence of the laws in question or by refusing to immediately instruct the jury as Hemphill requested.

Hemphill's insistence that taking judicial notice of the non-existence of the disputed laws "amounted to a directed verdict" and "violated his right to a fair trial and [to] present a defense," has little merit. *See, e.g., United States v. Lyon*, 397 F.2d 505, 513 (7th Cir. 1968) (permitting judicial notice of laws in the criminal context). Hemphill's conviction did not depend on the fictitious legal citations in the deeds. The government presented to the jury copies of letters that Hemphill sent to banks and property owners, including Atlas Oil, claiming that their properties had been seized and he had taken title as a "receiver" for the federal government. In light of these letters, and the other evidence of his fraudulent scheme, we are confident that absent the judicially noticed facts, the prosecution's case would not have been significantly less persuasive in the mind of the average juror. *See United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010) (holding that "the test for harmless error is whether, in the mind

of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." (citations and internal quotation marks omitted)). So, even if it we assume that the district court decision to take judicial notice was in error, the error was harmless. *See, e.g.*, *United States v. Carraway*, 108 F.3d 745, 756 (7th Cir. 1997) (finding that where evidence of guilt is overwhelming, an error may be harmless).

The only remaining issue is whether the district court erred by including the $600,000 loan "modification" in its loss-calculation. Hemphill argues that the evidence related to this transaction was unreliable and the district court should not have considered it. A district court's calculation of the amount of loss is a finding of fact that we review for clear error. *United States v. Smith*, 332 F.3d 455, 457 (7th Cir. 2003). To prevail, "the defendant must show that the district court's calculation was not only inaccurate but outside the realm of permissible computations," *United States v. Riley*, 493 F.3d 803, 810 (7th Cir. 2007), and we must be "left with a definite and firm conviction that a mistake has been made." *United States v. Salem*, 597 F.3d 877, 884 (7th Cir. 2010) (internal quotation marks omitted).

The district court properly factored the $600,000 loan "modification" into its loss calculation because the evidence before the court included the probation officer's interview with Iqbaluddin and the USRCA receipt, signed by Hemphill, that Iqbaluddin supplied the government. The receipt identified the property for which the loan would be "modif[ied]," the parties to the transaction, and amount of the new loan. The amount listed as the "remaining balance[]" falls squarely within the purview of intended loss. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) & cmt. n.3(A)(i), (ii) (2009) (authorizing the increase of a defendant's offense level based on the greater of the actual reasonably-foreseeable loss, or the loss "intended to result" even if "impossible or unlikely to occur"). Hemphill's objection to the reliability of this evidence fails to identify any error that might have produced a calculation "outside the realm of permissible computations." *Riley*, 493 F.3d at 810. The district court, as the fact-finder at sentencing, must be able to reasonably resolve questions of evidentiary import, such as determining the credibility and reliability of the evidence. To strip the district court of that authority would severely limit its capacity to impose sentences in accord with, or in departure from, the guideline's recommendations. We cannot say, therefore, that the district court's consideration of the evidence in the record and its consequent calculation of intended loss were clearly erroneous.

## III. CONCLUSION

For the reasons stated above, Hemphill's conviction and sentence are AFFIRMED.