**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LAURIE O. LUDVIGSON,

    Defendant-Appellant.

No. 05-4251
(D.C. No. 2:04-CR-00846-TS)
(D. of Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Laurie O. Ludvigson pleaded guilty to two counts of

bank fraud, in violation of 18 U.S.C. § 1344. The district court sentenced her to

27 months of imprisonment and 36 months of supervised release. Both terms

were at the bottom of the applicable Guidelines advisory range. The district court

also imposed occupational restrictions on Ms. Ludvigson's supervised release.

Ms. Ludvigson now challenges the substantive reasonableness of her sentence and

the district court's imposition of the occupational restrictions without factual

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

findings. While her appeal was pending, Ms. Ludvigson completed her term of imprisonment and was released. Because this court determines that Ms. Ludvigson's release moots her claim as to the substantive reasonableness of her 27 month custodial sentence, we do not have jurisdiction to consider the merits of that issue. As to her appeal regarding the occupational restrictions imposed on her supervised release, our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Ms. Ludvigson worked at the Bank of Ephraim from 1995 until it collapsed in June 2004. Thereafter, Far West Bank took over the Bank of Ephraim and hired Ms. Ludvigson. She worked for Far West Bank from June 2004 until September 2004.

According to Ms. Ludvigson, from 1999 until June 2004, she stole funds from the Bank of Ephraim to cover the training and travel expenses of her son, an "elite gymnast" and member of the United States national team. R., Vol. IV, ¶ 6 at 2 (Presentence Report, dated July 22, 2005) [hereinafter PSR]. In fact, she embezzled enough money that she was able to pay for his gymnastics expenses and also some other personal bills. She also confessed that a partial motivation for her theft "was getting back at" Randy McArthur, the head cashier, whom Ms. Ludvigson believed to be "so incompetent that he would not notice [the missing money] when reconciling the correspondence account." *Id.* ¶ 7 at 2-3.

Ms. Ludvigson's scheme involved depositing "Not Sufficient Funds" checks into her personal bank accounts until they cleared. Additionally, whenever customers forgot to include all of their checks on their deposit slips, Ms. Ludvigson deposited the checks not included on the deposit slips into her own account. Further, she stole approximately $3,000 to $4,000 from the Bank of Ephraim by filling out a general ledger ticket and taking the money. During her roughly five years of embezzling money at the Bank of Ephraim, she took an estimated $279,763.41.

At one point, Mr. McArthur confronted Ms. Ludvigson about the money she stole by filling out the general ledger ticket but agreed to let her keep her job if she repaid the money. Ms. Ludvigson then borrowed money from her father to replenish the stolen funds.[1]

This incident did not end Ms. Ludvigson's bank fraud. Undaunted, Ms. Ludvigson continued her pattern of embezzlement, even stealing from her new employer when Far West Bank took over the Bank of Ephraim. From June until September 2004, she defrauded Far West Bank of $24,853.99.

In August 2004, Ms. Ludvigson deposited into her own account a $710 check belonging to the City of Ephraim that the city mistakenly left off a deposit

---

[1] Unbeknownst to Ms. Ludvigson, Mr. McArthur embezzled even larger sums of money during this same time period, which ultimately contributed to the collapse of the bank in 2004.

slip. When the city notified Far West Bank of the discrepancy in its account, the bank investigated and discovered that Ms. Ludvigson had been embezzling for approximately five years. The bank management forwarded this information to the Federal Bureau of Investigation.

On December 15, 2004, the government indicted Ms. Ludvigson on four counts of bank fraud, in violation of 18 U.S.C. § 1344. On June 9, 2005, pursuant to a plea agreement, she pleaded guilty in the United States District Court for the District of Utah to two counts in exchange for dismissal of the remaining two counts. Ms. Ludvigson stipulated that the amount of loss was $304,617.40.

At the sentencing hearing on August 31, 2005, the sentencing court announced a "tentative sentence" of 27 months of imprisonment with 36 months of supervised release, advising that "counsel will be given the opportunity to make legal objections to the sentence before it is actually imposed." R., Vol. III, Doc. 45, at 6 (Sentencing Hr'g, dated Aug. 31, 2005). The proposed sentence was at the bottom of the advisory Guidelines range: the top was a prison term of 33 months and a supervised release term of 60 months.

The district court also announced its intention to impose special conditions of supervised release on Ms. Ludvigson, including *inter alia*, requiring her to inform any employers or future employers of her conviction and supervision status; to abide by occupational restrictions that prohibit her from accepting

employment in a federally regulated financial institution or having direct or indirect control over the assets or funds of others; and to refrain from opening any new lines of credit without the probation officer's approval. In imposing these conditions, however, the district court made no factual findings for the record.

When given the opportunity to make legal challenges to the sentence, neither the government nor Ms. Ludvigson objected. Ms. Ludvigson now appeals, however, contending that her sentence is substantively unreasonable under the 18 U.S.C. § 3553(a) factors and that two of the special supervised release conditions imposed by the court should be vacated because the court failed to make the required findings.

## II. <u>DISCUSSION</u>

### A. *Substantive Reasonableness of the Sentence*

Before we address the merits of Ms. Ludvigson's appeal, we must examine our jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). Article III of the United States Constitution only extends federal judicial power to cases or controversies. U.S. Const. art. III, § 2, cl. 1. "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury . . . likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). When the injury for which an appellant

seeks judicial redress is resolved or disappears prior to the appellate court's decision, there is no longer an Article III case or controversy. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987); *Meyers*, 200 F.3d at 718.

Ms. Ludvigson completed her 27 month term of imprisonment and is serving her 36 month term of supervised release. The question is thus whether Ms. Ludvigson's release has rendered her appeal, as to the substantive reasonableness of her sentence, moot. Ms. Ludvigson admits that a decision in her favor on her claim that her sentence was substantively unreasonable can neither reduce the amount of time she spent in custody nor reduce the length of her supervised release. *See* Notification of Apparent Mootness of Portions of Appeal filed by Aplt. at 1 (filed Aug. 20, 2007) (citing *United States v. Johnson*, 529 U.S. 53, 54 (2000), which holds that "excess prison time" served by a defendant on invalidated criminal convictions cannot be "credited to the supervised release" period to reduce its length). Given her admission, we conclude that Ms. Ludvigson is no longer threatened with an actual injury that is likely to be redressed by a favorable decision. *See Lewis*, 494 U.S. at 477; *Burke*, 479 U.S. at 363. Therefore, her appeal on this issue is dismissed as moot.

*B. Fact Finding for Supervised Release Conditions*

Ms. Ludvigson contests the district court's imposition of the following two conditions of supervised release: (1) "defendant is to inform any employer or

prospective employer of her current conviction and supervision status"; and (2)

"defendant shall not have direct or indirect control over the assets or funds of

others." R., Vol. I, Doc. 31, at 2 (Criminal J., dated Aug. 31, 2005).  Specifically,

Ms. Ludvigson challenges "whether the district court made the findings required

by the governing guideline." Aplt. Opening Br. at 37.[2]

Both of the conditions Ms. Ludvigson challenges constitute occupational

restrictions.  *See United States v. Souser*, 405 F.3d 1162, 1165 (10th Cir. 2005)

("Because an employer notification requirement limits the terms on which a

defendant may engage in the specified occupation, it must be treated as an

occupational restriction."); R., Vol. III, Doc. 45, at 7-8 (characterizing prohibition

on control over others' funds as an occupational restriction).

The statute authorizing supervised release specifically provides for the

imposition of occupational restrictions.  *See* 18 U.S.C. § 3583(d) (stating that the

sentencing court "may order" supervised release conditions of the kind identified

as "discretionary conditions" applicable to probation, including occupational

restrictions); *see also* 18 U.S.C. § 3563(b)(5) (specifying the particular

occupational restrictions incorporated by § 3583(d)).  The Guidelines expressly

identify occupational restrictions as one of the "special conditions" that may be

---

[2]    Ms. Ludvigson's release from prison does not render her challenge to the conditions of her supervised release moot. *See United States v. Tran*, 285 F.3d 934, 936 n.1 (10th Cir. 2002).

imposed under certain circumstances.  *See* U.S. Sentencing Guidelines Manual §

5D1.3(e)(4).  Guidelines § 5F1.5 details those circumstances.[3]

_____

[3]     Section 5F1.5 of the Guidelines (Occupational Restrictions) reads:

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

U.S. Sentencing Guidelines Manual § 5F1.5 (2004).  The U.S. Probation Office used the 2004 edition of the Sentencing Guidelines Manual in computing Ms. Ludvigson's sentence.  The parties did not object at sentencing; nor do they raise any concerns about this use on appeal.  Consequently, we look to the 2004 Guidelines Manual in deciding this case.

The threshold question is what standard of review should be applied.[4]  Ms. Ludvigson did not object to the sentencing court's failure to make factual findings.  Absent such an objection, "we review for plain error."  *United States v. Barajas*, 331 F.3d 1141, 1145 (10th Cir. 2003) (citing *United States v. Fabiano*, 169 F.3d 1299, 1307 (10th Cir. 1999)).[5]

Ms. Ludvigson argues that her claim should be reviewed under a de novo standard of review rather than a plain error standard because she had no notice of the occupational restrictions.  As support, she points to our holding in *United States v. Bartsma*, 198 F.3d 1191 (10th Cir. 1999).[6]  There, we concluded that a

---

[4]  Indeed, Ms. Ludvigson asserts that the standard-of-review issue is "critical to resolving" her claim that the district court erred in failing to make findings regarding the two occupational restrictions.  Aplt. Reply Br. at 7.

[5]  Ms. Ludvigson does not challenge the length of her supervised release.  Nor does she ground her appeal in an objection to the supervised release conditions themselves.  Ordinarily, an abuse-of-discretion standard would govern our review of such challenges.  *See Gall v. United States*, 128 S. Ct. 586, 594 (2007) ("Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."); *United States v. Pugliese*, 960 F.2d 913, 915 (10th Cir. 1992) ("Conditions of supervised release . . . are reviewed for abuse of discretion.").  Ms. Ludvigson maintains, however, that a de novo standard is appropriate (rather than an abuse-of-discretion standard) because her challenge raises a pure issue of law.  We need not explore this contention, because ultimately we conclude that this case is appropriately resolved under a plain error standard of review.

[6]  In an en banc footnote in *United States v. Atencio*, 476 F.3d 1099 (10th Cir. 2007), we overturned a portion of *Bartsma*.  Specifically, we stated: "[I]t is our unanimous decision to overturn the point of law articulated in *Bartsma*
(continued...)

defendant convicted of a felon-in-possession offense had not forfeited his objections to the special condition of his supervised release that required him to register as a sex offender.[7] *Id.* at 1198. We reasoned that "the complete lack of notice made it impossible for the parties to anticipate the nature of the special condition and short-circuited the significance of any opportunity to comment." *Id.*

---

[6](...continued)
that a defendant does not forfeit his right to appeal by failing to object to Rule 32 notice error at sentencing." *Id.* at 1105 n.6 (en banc footnote). We applied *Atencio*'s en banc holding prospectively, "to avoid unfairness to the parties." *Id.* Accordingly, this aspect of *Atencio* has no bearing on our resolution of this case. Arguably, given Ms. Ludvigson's framing of her challenge *infra* as *not* involving a claim of entitlement to advance notice (i.e., in effect, as not involving an assertion of Rule 32 error), our en banc holding in *Atencio* would not have been dispositive in any event. This arguably would have been the situation because in *Atencio* we clearly viewed the district court's imposition – without advance notice – of a supervised release sex offender registration requirement as a species of "Rule 32(h) error," when imposed in "a non-sexual offense context" and limited our discussion of the notice-forfeiture question to that setting. Indeed, Ms. Ludvigson suggests that *Atencio*'s en banc holding would have been inapposite. *See* Aplt. Letter Pursuant to Fed. R. App. P. 28(j) ("Unlike with a notice claim, Ms. Ludvigson would have had to know that specific findings were necessary for occupational restrictions to object to the court's failure to make them.").

[7]    *Bartsma* discusses whether the challenge was waived, but we have subsequently clarified that we are discussing a forfeiture of a right, rather than a waiver, when the right has not been intentionally relinquished; consequently, plain error review would be available. *See Atencio*, 476 F.3d at 1105 n.6; *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir.), *cert. denied*, 127 S. Ct. 247 (2006).

Ms. Ludvigson emphasizes that hers is not a claim of "entitle[ment] to advance notice" of the occupational restrictions. Aplt. Op. Br. at 35-36. That is, she does not argue that absent advance notice the district court could not legally impose the occupational restrictions. Instead, Ms. Ludvigson contends that "[w]ith no actual or constructive notice, the lack of objection to the district court's failure to make the findings . . . is excused" and plain error review is inappropriate. Aplt. Reply Br. at 10. She reasons that "*Bartsma* holds broadly that absent notice of a special condition" this principle of excuse controls. *Id.* at 9.

We need not decide whether there is any merit to Ms. Ludvigson's somewhat novel reading of the standard-of-review implications of *Bartsma*. Specifically, we conclude that Ms. Ludvigson *did* have notice of the restrictions – albeit constructive notice. And, as Ms. Ludvigson's argument at least tacitly acknowledges, where a defendant receives notice, the failure to object is not excused and plain error review applies.

As noted, the relevant statutory and Guidelines provisions expressly contemplate that the sentencing court may impose an occupational restriction as a condition of supervised release. *See* 18 U.S.C. §§ 3583(d), 3563(b)(5); U.S. Sentencing Guidelines Manual §§ 5D1.3(e)(4), 5F1.5. Accordingly, these restrictions were within the universe of discretionary supervised release

-11-

conditions "*to which all defendants are alerted.*"  *Barajas*, 331 F.3d at 1145

(internal quotation marks omitted) (quoting *United States v. Lopez*, 258 F.3d

1053, 1056 (9th Cir. 2001)); *see also United States v. Turner*, 88 F. App'x 307,

316 (10th Cir. 2004) (concluding that these provisions supported holding of

constructive notice).[8]

At least on these facts, this legal regime was sufficient to place Ms.

Ludvigson on constructive notice.  Given that her crimes occurred in the context

of her employment and involved affirmative, repeated acts of financial

---

[8]      Ms. Ludvigson suggests that reliance on the constructive-notice holding of *Barajas* would be misplaced because, unlike this case, the supervised release conditions in *Barajas* were recommended by the Guidelines.  *See* Aplt. Reply Br. at 9 ("Occupational restrictions are not like conditions the guidelines make standard or recommended, which a defendant should be aware are in play.").  Nothing in the language of *Barajas*, however, suggests that it has such a limited reach.  Moreover, occupational restrictions are front and center in the Guidelines as an available discretionary condition of supervised release: Not only are occupational restrictions listed in § 5D1.3 with other possible special conditions, the Guidelines address them in a separate section, § 5F1.5.  This lends significant support to the idea that a reasonable defendant should have known that the imposition of such restrictions was possible.  *E.g.*, *Turner*, 88 F. App'x at 316 (holding that the statutory and Guidelines provisions that "*authorize* the imposition of an occupational restriction" give constructive notice (emphasis added)).  In any event, on the facts of this case where there is no lack of an "obvious nexus," *Bartsma*, 331 F.3d at 1199 n.6, with occupational restrictions, we cannot accept Ms. Ludvigson's contention that her failure to object should be excused.  *Cf. United States v. Begay*, 470 F.3d 964, 976 (10th Cir. 2006) (declining to apply plain error review and excusing defendant's failure to object to the "district court's novel interpretation of *Booker*" because "it was an error that Mr. Begay would have had no reason to anticipate"), *cert. granted*, 128 S. Ct. 32 (2007).

misconduct, Ms. Ludvigson cannot plausibly argue that she did not have "any inkling" that (a) the court might impose occupational restrictions, and (b) such restrictions might relate to her control of money and her interactions with her employers. *Compare Bartsma*, 198 F.3d at 1199 n.6, 1200 n.7 (where court imposed sex offender registration requirement without "any obvious nexus" to defendant's felon-in-possession crime, parties did not have "any inkling" that the requirement was under consideration and, consequently, "were utterly unprepared to make reasoned arguments"), *with United States v. Brown*, 235 F.3d 2, 4 (1st Cir. 2000) ("Thus, the guidelines contemplate (*and give the appellant constructive notice*) that the sentencing court will tailor supervised release conditions to fit the circumstances of the offense and the characteristics of the offender."(emphasis added)). *Cf. Barajas*, 331 F.3d at 1145 (noting that "there may be occasions when a defendant has a good reason for not being prepared to address at sentencing the imposition of a condition of supervised release listed in the Sentencing Guidelines," but "Defendant has not suggested any reason why his counsel could not have anticipated the conditions imposed").

Accordingly, notwithstanding Ms. Ludvigson's arguments for a more searching standard of review, we apply a plain error standard to her sentencing challenge. Under the plain error standard, to secure relief, a defendant must establish (1) there is error; (2) that is plain; (3) that affects substantial rights (i.e.,

-13-

causes prejudice).  *United States v. Olano*, 507 U.S. 725, 732 (1993); *see also United States v. Gonzalez-Huerta*, 403 F.3d 727, 732, 736 (10th Cir. 2005) (en banc) (noting that "placing the burden on the appellant is one of the essential characteristics distinguishing plain error from harmless error").  If all three conditions are met, then an appellate court may exercise its discretion to notice a forfeited error, if the defendant further demonstrates that (4) the error seriously affects the fairness, integrity, or public reputation of the proceedings.  *See e.g.*, *Gonzalez-Huerta*, 403 F.3d at 736; *United States v. Ahidley*, 486 F.3d 1184, 1188 n.4 (10th Cir.), *cert. denied*, 128 S. Ct. 424 (2007).

Where a defendant suffers non-constitutional error, as alleged here, the standard for satisfying the fourth prong of the plain error test is "demanding." *Gonzalez-Huerta*, 403 F. 3d at 737; *see also United States v. Dowlin*, 408 F.3d 647, 671 (10th Cir. 2005) ("Where only non-constitutional *Booker* error is at issue, this standard is especially demanding.").  A defendant must show that allowing her non-constitutional error to stand would be "particularly egregious" and would constitute a "miscarriage of justice."  *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir.1997) (quoting *United States v. Ivy*, 83 F.3d 1266, 1295 (10th Cir. 1996)); *see also United States v. Treto-Martinez*, 421 F.3d 1156, 1161 (10th Cir. 2005) (conducting "our fourth prong analysis").

Ms. Ludvigson's challenge falls short on the third and fourth prongs of the plain error standard.[9] As to the third prong, she has failed to establish prejudice. In particular, Ms. Ludvigson has made no meaningful showing that there is a reasonable probability that the outcome would have been any different had the court made explicit findings. *See Gonzalez-Huerta*, 403 F.3d at 733 ("To meet this burden, the appellant must show 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004))).

Ms. Ludvigson makes two principal arguments concerning the third prong: first, that she is "prejudiced by unnecessary requirements that will limit her employment," Aplt. Opening Br. at 44 n.3; and second, that her "contrition and rehabilitative work undermine confidence that the district court would make this finding, showing prejudice as to both challenged restrictions," Aplt. Reply Br. at 13 n.4.

The first argument, however, does not target the kind of prejudice with which the plain error standard is concerned – that is, prejudice arising from a reasonable probability that but for the district court's error the outcome would

---

[9] We do not decide whether Ms. Ludvigson has shown error that is plain under the first two prongs of the standard. Rather, we conclude that even if Ms. Ludvigson were to make that showing, she would not meet her burden under the third and fourth prongs of the plain error standard; therefore, her challenge fails.

have been different (here, that but for the alleged error, the district court would not have imposed the occupational restrictions). *Olano*, 507 U.S. at 734. *Cf. Dowlin*, 408 F.3d at 670 (in the context of constitutional *Booker* error, stating that it is "highly unlikely that the factual findings of the district court affected [defendant's] substantial rights" where defendant failed to argue the jury would not have reached the same conclusion).

The second argument is insufficient to raise a reasonable probability. Ms. Ludvigson's contrition and rehabilitative efforts – however sincere – arose only *after* the government charged her with serious, bank fraud crimes. Indeed, even Mr. McArthur's discovery of an instance of her theft did not lead Ms. Ludvigson to pause and reflect upon the wrongfulness of her conduct and forswear a criminal life-style. Instead, she kept stealing. Under these circumstances, we would be hard-pressed to conclude that if the district court had made findings – including findings addressing Ms. Ludvigson's post-charge positive conduct – that there is a reasonable probability that the court would have decided to reject the occupational restrictions.

Our conclusion is bolstered by the ample support in the record for the restrictions. We will not find plain error where the record clearly demonstrates a basis for the district court's actions, despite its failure to make adequate factual findings. *See United States v. Diaz*, 176 F.3d 52, 118 (2d Cir. 1999) (no plain

error where record "clearly demonstrates" basis for district court's sentencing enhancement).

Generally, a district court enjoys broad discretion in imposing conditions of supervised release. *See, e.g.*, *United States v. Erwin*, 299 F.3d 1230, 1232 (10th Cir. 2002). On this record, we clearly would not conclude that the district court strayed from the permissible zone of discretion in imposing the restrictions. Ms. Ludvigson engaged in a multi-year bank fraud in which she repeatedly stole money from her employers and disregarded their interests.[10] In particular, Ms. Ludvigson exhibited a strong commitment to a criminal life-style, evidenced by the duration of her pattern of wrongdoing and her refusal to be chilled by Mr. McArthur's detection of her theft.

The district court would not have erred under these circumstances in concluding that its conditions were reasonably necessary (1) to reduce the risk that she would engage in future financial irregularities (i.e., by limiting her control over the funds of others); and (2) to protect future employers from unwittingly exposing themselves to that risk (i.e., by requiring her to inform her current or prospective employers of her conviction). *Cf. Souser*, 405 F.3d at 1167 (where defendant's offense conduct involved non-employer-related false

---

[10]     In fact, the district court found that Ms. Ludvigson abused a position of private trust under Guidelines § 3B1.3. Ms. Ludvigson did not challenge that finding before the district court, nor does she do so on appeal.

statements and passive receipt of governmental subsidies under false pretenses, district court's error in failing to make findings to justify employer-notification condition was not harmless).

Furthermore, the district court would not have abused its discretion in concluding that its restrictions appropriately reflected the parsimony principles embodied in Guidelines § 5F1.5 (i.e., "the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public"). It could have imposed these appropriate occupational restrictions for five years, but instead chose to do so for three.

As for the fourth prong of the plain error test, we easily conclude that the district court's omission of findings did not seriously affect the fairness, integrity, or public reputation of the proceedings. Ms. Ludvigson has not directed us to any evidence in the record that casts doubt on the fairness of the conditions imposed. *See Dowlin*, 408 F.3d at 672 ("Dowlin has pointed to nothing in the record that casts doubt on the fairness of her sentence. . . . the record contains ample evidence supporting the sentence imposed. . . ."). In contrast, as reflected in the third-prong discussion, the district court could have easily pointed to the reasons underlying its imposition of the occupational restrictions. *Cf. United States v. Aptt*, 354 F.3d 1269, 1287 (10th Cir. 2004) (noting that because the court could have easily identified additional facts to support its sentencing enhancement, the

failure to make specific findings did not seriously affect the fairness of the proceedings and was not plain error).

We are convinced upon review of the record that the occupational restrictions imposed on Ms. Ludvigson's supervised release were not "particularly egregious" or a "miscarriage of justice." *Gonzalez-Huerta*, 403 F.3d at 737-38. In sum, Ms. Ludvigson has failed to establish grounds for us to recognize under plain error review any error by the district court in imposing the two occupational restrictions at issue.

## III. <u>CONCLUSION</u>

We **DISMISS** as moot Ms. Ludvigson's appeal as to the substantive reasonableness of her sentence. Furthermore, reviewing Ms. Ludvigson's challenge to her supervised release conditions under the demanding plain error standard, we discern no basis for disturbing the district court's sentencing order and, accordingly, **AFFIRM**.

Entered for the Court

Jerome A. Holmes
Circuit Judge